[No. C047855. Third Dist. May 31, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT DWAYNE ARNETT, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II through V of the Discussion.

**COUNSEL**

Barbara Coffman, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, John G. McLean and R. Todd Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BUTZ, J.**—Defendant Robert Dwayne Arnett was found guilty by a jury of assault with force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1)—count 1)[1] and battery with serious bodily injury (§ 243, subd. (d)—count 2). In a bifurcated proceeding, the trial court found defendant had a prior strike conviction (§§ 667, subds. (b)–(i), 1170.12, subd. (b)) and a prior serious felony conviction (§ 667, subd. (a)(1)). Probation was denied and defendant was sentenced to serve 13 years in state prison, consisting of a four-year upper term for violation of section 243, subdivision (d), doubled based on defendant's prior strike conviction (§ 667, subd. (e)(1)), plus five years for the prior serious felony enhancement (§ 667, subd. (a)). An eight-year term on the remaining count was stayed pursuant to section 654.

Defendant appeals, raising numerous claims. Finding none of these meritorious, we shall affirm.

## FACTUAL BACKGROUND

The victim, John Walton, had been acquainted with defendant for 20 years. Walton's niece Victoria lived upstairs in the same apartment complex as defendant's girlfriend/fianceé, A.G. Defendant lived there with A.G., her two children (seven-year-old F.H. and 11-year-old B.H.) and his son (11-year-old S.A.).

Victoria asked Walton to come over and talk to defendant, who was depressed because he thought he found A.G. with another man. Walton agreed and went to A.G.'s apartment to talk to defendant, where he found him lying on a bed and unresponsive. According to A.G., defendant had been drinking "[a]ll day."

Walton, A.G. and another friend, Marlin, went upstairs to Victoria's apartment, where they "had plenty of beer." Walton acknowledged drinking 12 beers that day.

Three hours later, the children knocked on Victoria's door and said they wanted to see their mom. Victoria looked away and defendant came in right after them. A.G.'s son F.H. testified that, before going upstairs, defendant said he was going to beat up Marlin if he was there with A.G. (although Marlin was not the man defendant thought she had been with). According to A.G.'s

---

[1] Undesignated statutory references are to the Penal Code.

son B.H., he thought defendant was going to "caus[e] trouble" because defendant was drunk, so he locked the door to try to keep him from going upstairs.

When defendant entered Victoria's apartment, Walton was sitting on the floor and said "hi." Defendant ignored him and said to Marlin, "What are you doing being up here, drinking with that white boy [referring to Walton]? He *said he was going to shoot you.*" B.H. testified that, in making this remark, defendant also referred to Walton as a "mother-effer" (but that defendant "actually used the real words").

Several of the witnesses noted defendant was angry when he came upstairs. Walton and Victoria testified that defendant came into Victoria's apartment and was moving around quickly, and according to Victoria, was "yelling and screaming" at A.G., Walton and Marlin. This quickly escalated into a situation where two of the boys tried to restrain defendant either just prior to his entering the apartment or once he was inside. The result was that defendant kicked Walton directly in the face causing severe head injuries. Victoria called 911, and Walton, who was bleeding profusely, was transported to the hospital for treatment.

The descriptions by the witnesses varied as to how Walton got kicked by defendant:

According to Walton and Victoria, some of the children who were present tried to push or pull defendant back to prevent him from getting into the apartment, but defendant swept the children back with his arm. Defendant's son S.A. was saying, "No, Daddy. No, Daddy. No, Dad."

Victoria testified that, when defendant pushed the children back, he "reared up his right leg" "like he was going to kick a football" and kicked Walton "right square in the face." Walton, who had been a Marine, said he knew defendant "was going to come up on [him]," but he did not think defendant would hurt him. However, "[i]t happened in a flash" and Walton, who sustained a broken nose and a concussion, insisted that defendant kicked him intentionally because he "just kind of snapped."

According to the three boys, defendant kicked Walton accidentally. F.H. testified that B.H. and S.A. had grabbed defendant's legs to prevent him from entering the apartment, which caused defendant to trip over a box and accidentally kick Walton. S.A. said defendant stumbled backwards over a box and kicked Walton and that he and B.H. were pushing defendant from the side. B.H. also testified to this and added that he had put the box behind defendant.

Defendant was very agitated and displayed symptoms of intoxication when police officers arrived. Initially, he was uncooperative, refusing to sit down when instructed to by one of the officers. Defendant told the police he accidentally kicked Walton when he lost his balance after his son bumped him. When one of the officers asked defendant to sit down so the officer could talk to Walton, defendant responded, "I already told you what happened." After investigating the incident, officers arrested defendant.

In addition to the broken nose and concussion, Walton continued to suffer neck pain and short-term memory problems at the time of trial, over two months later.

## DISCUSSION

### I. Serious Prior Felony Enhancement

Defendant argues that imposition of the five-year enhancement under section 667, subdivision (a)(1), was unauthorized because the jury did not make a factual finding that his current offense was a serious felony. We disagree.

Pursuant to section 667, subdivision (a)(1), a five-year sentence enhancement applies when a defendant is convicted of a serious felony as defined in section 1192.7, subdivision (c), and has a previous serious felony conviction. When a defendant's current offense is not listed specifically in section 1192.7, subdivision (c), whether that offense is a serious felony is an issue for the trier of fact. (*People v. Bautista* (2005) 125 Cal.App.4th 646, 655 [22 Cal.Rptr.3d 845]; *People v. Taylor* (2004) 118 Cal.App.4th 11, 27 [12 Cal.Rptr.3d 693] (*Taylor*).)

Under section 1192.7, subdivision (c)(8), an offense is a serious felony if, in committing the offense, the defendant personally inflicts great bodily injury on a person other than an accomplice. Numerous courts have recognized that "[t]he terms 'serious bodily injury' and 'great bodily injury' have substantially the same meaning." (*People v. Hawkins* (1993) 15 Cal.App.4th 1373, 1375 [19 Cal.Rptr.2d 434] (*Hawkins I*); see, e.g., *People v. Burroughs* (1984) 35 Cal.3d 824, 831 [201 Cal.Rptr. 319, 678 P.2d 894]; *People v. Chaffer* (2003) 111 Cal.App.4th 1037, 1042 [4 Cal.Rptr.3d 441]; *People v. Hawkins* (2003) 108 Cal.App.4th 527, 531 [133 Cal.Rptr.2d 548] (*Hawkins II*); *People v. Beltran* (2000) 82 Cal.App.4th 693, 696–697 [98 Cal.Rptr.2d 730]; *People v. Kent* (1979) 96 Cal.App.3d 130, 136 [158 Cal.Rptr. 35].) In fact, great bodily injury has been held to be "an element of battery under section 243, subdivision (d)" (*Hawkins I, supra*, 15 Cal.App.4th at p. 1375), including for purposes of establishing the enhancement contained

in section 667, subdivision (a) (*People v. Moore* (1992) 10 Cal.App.4th 1868, 1871 [13 Cal.Rptr.2d 713]).

Here, before the presentation of evidence commenced, defendant waived trial by jury on "the issues of the priors," agreeing that the court would be the trier of fact concerning the prior allegations. Contrary to defendant's claim on appeal, the waiver of his right to a jury trial on his prior conviction encompassed his right to a jury determination of whether his current offense was a serious felony for purposes of section 667, subdivision (a). (*People v. Yarbrough* (1997) 57 Cal.App.4th 469, 477–478 [67 Cal.Rptr.2d 227] (*Yarbrough*) [waiver of right to jury trial on " 'prior conviction' " includes issue of whether or not current offense is a serious felony], citing *People v. Equarte* (1986) 42 Cal.3d 456, 467 [229 Cal.Rptr. 116, 722 P.2d 890]; cf. *Taylor, supra,* 118 Cal.App.4th at p. 27, fn. 6 [jury trial on whether current offense is serious felony held not waived when defendant waived jury trial on "prior conviction" while jury deliberating on charged offenses, including great bodily injury enhancement].) Defendant's reliance on *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] and *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531] is misplaced, as the right established by those cases—to have a jury determine " 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum' " (*Blakely,* at p. 301 [159 L.Ed.2d at p. 412], quoting *Apprendi,* at p. 490 [147 L.Ed.2d at p. 455])—was waived by defendant as to his prior conviction. There is nothing in the language of *Apprendi* or *Blakely* to prevent a defendant from waiving this right.

Nonetheless, defendant contends the trial court was not authorized to make a finding that his current offense was a serious felony because the jury did not reach a verdict on an enhancement allegation that he personally inflicted great bodily injury pursuant to section 12022.7, which was alleged as to the section 245, subdivision (a)(1) charge.[2] As infliction of great bodily injury was apparently the basis for finding that defendant's current offense was a serious felony for purposes of section 1192.7, subdivision (c), a valid finding in this regard was required in order to impose the enhancement under section 667, subdivision (a).[3]

---

[2] Although the jury returned a verdict form to the court, finding this enhancement true, one of the jurors indicated this was not his verdict during a polling of the jury, and the parties stipulated to dismissal of this enhancement.

[3] An offense is also a serious felony for purposes of section 667, subdivision (a), if, in its commission, the defendant personally used a dangerous or deadly weapon. (§ 1192.7, subd. (c)(23).) Although the first amended information alleged that defendant assaulted Walton both with force likely to produce great bodily injury *and* with a deadly weapon, "to wit, boots," the jury was instructed and received a verdict form only as to assault with force likely

Defendant relies principally on *Taylor*, *supra*, 118 Cal.App.4th 11, for this contention. In *Taylor*, a jury returned verdicts finding three great bodily injury enhancements alleged against the defendant not true. (*Id.* at pp. 17–18.) Nonetheless, the trial court found the defendant's conviction for battery with serious bodily injury (§ 243, subd. (d)) was a serious felony for purposes of the enhancement under section 667, subdivision (a)(1). (118 Cal.App.4th at p. 22.) Division One of the Court of Appeal for the Fourth Appellate District held that the trial court was precluded from finding the defendant's current offenses were serious felonies based on the infliction of great bodily injury when the jury had made express findings to the contrary. (*Id.* at pp. 19–20.) Acknowledging that "serious bodily injury" and "great bodily injury" have been viewed by courts as having " 'substantially the same meaning,' " the appellate court nonetheless concluded that the jury's finding of serious bodily injury could not be deemed the equivalent of a finding of great bodily injury based on the particular circumstances of the case. (*Id.* at pp. 24, 25.) These circumstances included the nature of the victim's injuries (which included a small facial bone fracture that would heal on its own); the jury instructions containing different definitions for the two terms; the arguments of counsel implying a distinction between great bodily injury and serious bodily injury; and the jury's question during deliberations regarding whether a simple bone fracture could constitute great bodily injury. (*Ibid.*) The appellate court concluded that, under such circumstances, the trial court was not at liberty to make a legal determination contrary to the jury's factual finding. (*Id.* at p. 27.)

*Taylor* is readily distinguishable from the present matter. Here, the jury did *not* make a determination on the great bodily injury enhancement and defendant waived jury trial on the issue for purposes of the serious prior felony enhancement. Thus, the trial court did not "substitute[] its own . . . legal determination for the express factual findings of the jury" (*Taylor*, *supra*, 118 Cal.App.4th at p. 30) and the narrow ruling of *Taylor* does not apply. As recognized by the court in *Taylor*, "In the absence of any contrary indication in the record, the trial court . . . [i]s justified in applying the usual assumption that 'great bodily injury' and 'serious bodily injury' are 'essentially equivalent.' " (*Id.* at p. 26.)

Defendant also claims that, by stipulating that the great bodily injury enhancement would not apply to count two (the charge of battery with serious bodily injury) and agreeing to dismiss the enhancement after the jury was polled, "the prosecutor prevented the jury and the court from making a

---

to produce great bodily injury. There is nothing in the record on appeal to suggest the trial court found defendant's current offense to be a serious felony based on a finding that he used a deadly weapon.

finding that [defendant] inflicted great bodily injury in the course of committing battery." (Italics omitted.) However, in addition to the great bodily injury enhancement under section 12022.7, the first amended information alleged that the violation of section 243, subdivision (d), was a serious felony, and the prosecutor did not dismiss this allegation or the enhancement under section 667, subdivision (a)(1). Thus, the issue of whether defendant's current offense was a serious felony was not removed from the trier of fact. Furthermore, the fact that the prosecutor stipulated that the great bodily injury enhancement did not apply to the violation of section 243, subdivision (d), is of no significance with regard to whether that offense was a serious felony, as sentencing on both allegations ordinarily is precluded by the fact that the enhancement is considered an element of the offense. (*Hawkins I, supra,* 15 Cal.App.4th at pp. 1374, 1375; cf. *People v. Otterstein* (1987) 189 Cal.App.3d 1548, 1550 [235 Cal.Rptr. 108] [the defendant could be sentenced for assault with serious bodily injury and enhancement for inflicting great bodily injury if part of plea bargain].)

And defendant's claim rings hollow that he did not intend to waive his right to a jury determination on whether the current offense was a serious felony, as he made no objection at the time of sentencing to the trial court making this determination. We find the circumstances here similar to those in *Yarbrough, supra,* 57 Cal.App.4th 469, in which the prosecutor struck a great bodily injury allegation during voir dire because she mistakenly believed it was alleged as an enhancement rather than as the factual basis for alleging that the current offense was a serious felony. The defendant in that case, as here, claimed his jury trial waiver extended only to whether he had suffered the prior conviction. The appellate court concluded the "defendant must have comprehended that the prosecutor still intended to prove that the current offense was a serious felony," as she did not also dismiss the section 667, subdivision (a) allegation. (*Id.* at pp. 477–478.) The appellate court held the defendant's failure to object to the dismissal of the great bodily injury allegation and to the dismissal of the jury without a determination as to whether his current offense was a serious felony precluded the claim on appeal. (*Id.* at p. 478.)

In sum, in light of defendant's waiver of a jury trial on the prior allegations, the trial court properly assumed the responsibility of determining whether defendant's current offense was a serious felony. Thus, the court was warranted in concluding that defendant's violation of section 243, subdivision (d), was such a felony.

**II.–V.**[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Davis, Acting P. J., and Raye, J., concurred.

A petition for a rehearing was denied June 27, 2006, and appellant's petition for review by the Supreme Court was denied September 20, 2006, S144869. Kennard, J., was of the opinion that the petition should be granted.

---

[*]See footnote, *ante*, page 1609.