Filed 7/21/15  P. v. Jackson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C073958 |
| v. | (Super. Ct. No. 11F05445) |
| MICHAEL JACKSON, | |
| Defendant and Appellant. | |

In a bifurcated trial, a jury convicted defendant Michael Jackson of battery causing serious bodily injury (Pen. Code, § 243, subd. (d)),[1] and the trial court found defendant's current offense is a serious felony as are his prior two convictions.  The trial court sentenced defendant to serve an indeterminate term of 25 years to life in addition to a determinate term of 5 years.

On appeal, defendant contends (1) his right to a jury trial was denied by the trial court's finding his current offense is a serious felony, (2) the trial court erred in admitting

---

[1]     Undesignated statutory references are to the Penal Code.

1

lay opinion testimony by an eyewitness to the attack, (3) the jury should have been instructed about which of two charged counts was the lesser offense, (4) he received ineffective assistance of counsel because his trial attorney did not object to admission of the 911 call that was placed immediately after the attack, and (5) CALCRIM No. 330 misinstructed the jury by bolstering a child witness's testimony.

We conclude defendant's waiver of a jury trial on the issue of his prior convictions alleviated the need for the jury to find whether the current conviction constitutes a serious felony. The trial court did not err in admitting the lay opinion testimony of an eyewitness. Defendant was not entitled to have the jury instructed on a sentencing issue in order to afford him leniency. Defendant's trial attorney was not ineffective for not objecting to admission of the 911 call, a piece of evidence counsel used effectively to secure defendant's acquittal on other counts. Finally, we conclude CALCRIM No. 330 does not bolster the testimony of child witnesses. Accordingly, we affirm.

FACTUAL AND PROCEDURAL HISTORY

*Prosecution Evidence*

In August 2011, Lavar Daniel and Michelle Warmsley were in a dating relationship.[2] They had two daughters together and a stepson, Deshawn, from Michelle's prior relationship. Michelle's sisters, Diana and Tasha, had concerns about whether Daniel was abusive to Michelle and other family members. Tasha and defendant had a daughter together named Jailanie Jackson. At the time, Tasha and defendant were not dating but "maintained some sort of a relationship." In response to questioning by Diana and Tasha, Michelle denied any abuse by Daniel.

During the day on August 4, 2011, Michelle spent time with her family in South Sacramento while Michelle styled Jailanie's hair. At 10:00 p.m., Daniel picked up

---

[2] Due to shared surname, we refer to members of the Warmsley family by their first names.

Michelle and their children. As soon as Daniel began pulling the car away from the curb, Michelle's brother, Terrell, drove in front of Daniel's and blocked him in. Terrell approached Daniel and told him to get out of the car so they could talk. Daniel rolled down his window slightly but refused to get out because Terrell seemed ready to fight. Daniel and Terrell had argued for about five minutes when defendant pulled his car behind Daniel's. Terrell appeared surprised at defendant's arrival.

Defendant went up to Daniel's window and told him to get out. Daniel remained in the car, but Michelle got out. Defendant went around the car, knocked Michelle over, and got into the front passenger seat. Michelle testified she saw defendant hiding a gun behind his back. Daniel does not remember anything that happened afterward.

Michelle and Deshawn testified Daniel asked defendant, "[W]hat are you doing?" Daniel tried to take off his seatbelt and get away when defendant began hitting him in the face. Michelle tried to help Daniel but was restrained by Tasha. Michelle eventually broke free and attempted to pull defendant out of the car. However, she managed to grab only defendant's shirt. As defendant was punching Daniel, the car started moving. The children were screaming in the backseat. Michelle saw the car crash and estimated it was going 25 to 30 miles an hour at impact.

Michelle ran over to find Daniel unconscious. Blood streamed from Daniel's mouth and he had difficulty breathing. Michelle tried to wake Daniel up while she dialed 911 for help.

A recording of the 911 call was played for the jury. During the call, Michelle reported Daniel was bleeding profusely and needed urgent help. She also stated Daniel had been attacked by an unknown assailant. In the background, Michelle argued with family members and accused them of spreading the lie that Daniel was abusive. Tasha responded she "didn't tell [defendant] to come over here." But Tasha also said Daniel was "putting his hands on" one of the boys in the family. At trial, Michelle stated Tasha told her: "I don't give a fuck, whoopty whoop whoop, [Daniel] got what he deserved."

3

Police officers and paramedics responded to the scene. Michelle told Police Officer Daniel Swafford that defendant attacked Daniel. To Officer Swafford, Daniel's injuries appeared consistent with assault. Daniel was transported to the hospital where he was admitted into the intensive care unit and placed on a ventilator. Tests showed he had multiple fractures in his jaw and damage to his submental nerve. Daniel underwent surgery and remained in the hospital for approximately two weeks.

## *Defense Argument*

The defense did not introduce evidence. During closing arguments, the defense urged the jury to conclude Daniel's injuries were caused by the airbag exploding on his car's impact.

## DISCUSSION

## I

## *Lack of Jury Finding Regarding Whether the Current Offense is a Serious Felony*

Defendant contends the trial court violated his Sixth Amendment right to a jury trial by determining his current conviction involved personal infliction of great bodily injury. He argues he was entitled to have the jury, rather than the trial court, make the finding of personal infliction of great bodily injury. We reject the argument.

## **A.**

## *Bifurcated Trial*

Count one of the information charged defendant with violating section 243, subdivision (d), by committing a battery on Daniel that resulted "in the infliction of serious bodily injury on such person." Count one further charged Daniel was not an accomplice and defendant personally inflicted great bodily injury. The information gave notice the "offense is a serious felony within the meaning of . . . Section 1192.7(c)." Subdivision (c)(8) of section 1192.7 includes among serious felonies "any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice, or any felony in which the defendant personally uses a firearm."

4

The jury found defendant violated section 243, subdivision (d), by committing a "battery causing serious bodily injury upon Lavar Daniel." However, the jury was not asked to find defendant personally inflicted the injury.

While the jury was deliberating, defendant waived his right to a jury trial on his prior convictions during the following colloquy:

"THE COURT: All right. [Defendant], I have to take a personal waiver from you. You understand you have the right to have this jury make the decision about your priors; you understand that?

"THE DEFENDANT: Yes, Your Honor, I understand that."

Thus, the trial court "enter[ed] a waiver of the jury trial on priors should it become necessary."

After the jury convicted defendant of battery causing serious bodily injury, the trial court discharged the jury and conducted a bench trial that culminated in finding true the allegation of two prior strikes.

At sentencing, defendant's trial attorney stated he "would like to make a record that there was no finding of serious bodily injury by the jury." Defendant's attorney further stated, "I believe that my client would be constitutionally entitled to an actual finding of serious bodily injury. [¶] I bring that up because that affects not only the nature of the current conviction, but it also affects the credit situations that would arise from his sentence." The People responded that "there is no evidence that there was an accomplice" or any evidence "that anyone committed the injuries on Lavar Daniel aside from the defendant."

The trial court explained: "We did talk about this at our prior meeting. And while I agree, and in the future will change this procedure, but it would have been helpful to have a special finding on the verdict form. We did not do that. [¶] But for clarity's sake, the defendant was charged as having personally inflicted injury, not as an aider or abettor or co-conspirator. It was clear on the charging document. Notice was given. There's no

question from the evidence and the arguments and the instructions that were given and the charging document that the defendant, if guilty at all, was the perpetrator and not an aider and abettor. [¶] And, therefore, it certainly falls under 1192.7(c)(8)."

**B.**

***Whether the Current Offense is a Serious Felony***

Defendant contends his jury trial right was denied for lack of a jury finding he personally inflicted great bodily injury on a non-accomplice. This court rejected a similar contention in *People v. Arnett* (2006) 139 Cal.App.4th 1609 (*Arnett*). *Arnett* involved the imposition of a sentence enhancement for the commission of a serious felony under section 1192.7, subdivision (c)(8), based on personal infliction of great bodily injury on a person other than an accomplice. (*Id.* at p. 1613.) As *Arnett* notes, it is well established the terms "serious bodily injury" and "great bodily injury" are essentially synonymous. (*Ibid.* [collecting authority].) The defendant in *Arnett* waived the right to a jury trial on the issue of his prior convictions, "agreeing that the court would be the trier of fact concerning the prior allegations." (*Id.* at p. 1614.) Although the jury convicted defendant of battery causing great bodily injury, it did not specifically find he personally inflicted the great bodily injury even though this fact was necessary to impose the sentence enhancement. (*Ibid.*) On appeal, the defendant in *Arnett* argued his right to a jury trial was violated for lack of the finding on this necessary element for purposes of sentence enhancement. (*Ibid.*)

This court rejected the contention, explaining that "[c]ontrary to defendant's claim on appeal, the waiver of his right to a jury trial on his prior conviction encompassed his right to a jury determination of whether his current offense was a serious felony for purposes of section 667, subdivision (a). (*People v. Yarbrough* (1997) 57 Cal.App.4th 469, 477–478 (*Yarbrough*) [waiver of right to jury trial on ' "prior conviction" ' includes issue of whether or not current offense is a serious felony], citing *People v. Equarte* (1986) 42 Cal.3d 456, 467; cf. [*People v.*] *Taylor* [(2004)] 118 Cal.App.4th [11,] 27, fn.

6

6, [jury trial on whether current offense is serious felony held not waived when defendant waived jury trial on 'prior conviction' while jury deliberating on charged offenses, including great bodily injury enhancement].) Defendant's reliance on *Apprendi v. New Jersey* (2000) 530 U.S. 466, 147 L.Ed.2d 435 (*Apprendi*) and *Blakely v. Washington* (2004) 542 U.S. 296, 159 L.Ed.2d 403 (*Blakely*) is misplaced, as the right established by those cases—to have a jury determine ' "any fact that increases the penalty for a crime beyond the prescribed statutory maximum" ' (*Blakely,* at p. 301, at p. 412, quoting *Apprendi*, at p. 490)—was waived by defendant as to his prior conviction. There is nothing in the language of *Apprendi* or *Blakely* to prevent a defendant from waiving this right." (*Arnett*, *supra*, 139 Cal.App.4th at p. 1614.)

Based on this reasoning, *Arnett* concluded that "in light of defendant's waiver of a jury trial on the prior allegations, the trial court properly assumed the responsibility of determining whether defendant's current offense was a serious felony. Thus, the court was warranted in concluding that defendant's violation of section 243, subdivision (d), was such a felony." (*Id.* at p. 1616.) The reasoning and conclusion of *Arnett* apply and lead us to reject defendant's claim of a Sixth Amendment violation.

Defendant argues *Arnett* was wrongly decided because it relied on two cases decided before *Apprendi*, namely *People v. Yarbrough* (1997) 57 Cal.App.4th 469 (*Yarbrough*) and *People v. Equarte* (1986) 42 Cal.3d 456 (*Equarte*). We disagree. In *Equarte*, the California Supreme Court held a defendant's agreement to a bifurcated trial in which the trial court found the truth of allegations regarding prior convictions waived the right to have the jury determine whether the current offense was a serious felony. (42 Cal.3d at p. 467.) The *Yarbrough* court applied the *Equarte* holding, noting it was bound by the California Supreme Court's decision. (*Yarbrough*, at p. 478; *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) We agree with *Yarbrough* that we are bound to follow *Equarte* and see no reason to depart from the California Supreme Court's guidance in that case even after *Apprendi* and *Blakely*. *Equarte*'s holding does not

7

undermine the right to jury trial, but determines only the scope of a waiver of jury trial on the issue of prior convictions entered by the defendant at trial. (*Equarte, supra,* 42 Cal.3d at p. 467.) Consequently, we adhere to the holding of *Equarte* and reject defendant's Sixth Amendment argument on the issue of the seriousness of his current offense.

## II

### *Admission of Lay Opinion Testimony*

Defendant contends the trial court erred in admitting into evidence Michelle's opinion her family and defendant planned the attack on Daniel. We are not persuaded.

### A.

### *Michelle's Testimony*

The jury heard the recording of Michelle's 911 call in which she summoned help after Daniel's attack. In the background, the jury heard Michelle accusing her family members of telling defendant she was being abused by Daniel. And the jury heard Tasha deny telling defendant about the abuse. Tasha, however, seemed incredulous about Michelle's professed lack of concern for abuse of a child in the family by Daniel.

At trial, Michelle testified she realized during the attack that her family had "set up" Daniel. She came to her realization when she remembered no one had mentioned Daniel all day and then Daniel was suddenly blocked in when he was about to drive away. Defendant's trial attorney objected, but the trial court admitted the evidence as lay opinion testimony.

### B.

### *Lay Opinion Testimony*

Evidence Code section 800 provides: "If a witness is not testifying as an expert, his [or her] testimony in the form of an opinion is limited to such an opinion as is permitted by law, including but not limited to an opinion that is: [¶] (a) Rationally based on the perception of the witness; and [¶] (b) Helpful to a clear understanding of his [or

8

her] testimony." In reviewing a claim of evidentiary error in the admission of testimony under Evidence Code section 800, the California Supreme Court has explained: " 'A lay witness may express an opinion based on his or her perception, but only where helpful to a clear understanding of the witness's testimony (Evid. Code, § 800, subd. (b)), "i.e., where the concrete observations on which the opinion is based cannot otherwise be conveyed." [Citation.]' (*People v. Hinton* (2006) 37 Cal.4th 839, 889.) Such a situation may arise when a witness's impression of what he or she observes regarding the appearance and demeanor of another rests on 'subtle or complex interactions' between them (*ibid.*) or when it is impossible to otherwise adequately convey to the jury the witness's concrete observations. (*People v. Melton* (1988) 44 Cal.3d 713, 744; *People v. Manoogian* (1904) 141 Cal. 592, 595–597.) A lay witness generally may not give an opinion about another person's state of mind, but may testify about objective behavior and describe behavior as being consistent with a state of mind. (*People v. Chatman* (2006) 38 Cal.4th 344, 397.)" (*People v. DeHoyos* (2013) 57 Cal.4th 79, 130-131 (*DeHoyos*).)

We review a trial court's admission of evidence under the deferential abuse of discretion standard of review. (*DeHoyos*, *supra*, 57 Cal.4th at p. 131.) As this court has previously stated, "abuse of discretion implies arbitrary determination, capricious disposition or whimsical thinking where the court exceeds all bounds of reason, all of the circumstances being considered." (*People v. Pitcock* (1982) 134 Cal.App.3d 795, 801.)

## C.

### *Testimony that Daniel was "Set Up" by Michelle's Family*

The trial court did not err in admitting Michelle's testimony she believed her family had "set up" Daniel for the attack. Her opinion that he suffered a planned attack rested on her observation of subtle signs gleaned that day: her family's total silence on the topic of Daniel that day, the timing of Terrell and defendant's blocking in Daniel's car, and her argument with her family immediately after Daniel crashed the car.

9

Michelle's testimony drew a conclusion about planning based on her observations of the circumstances surrounding the attack rather than speculation about the mental state of others. Her testimony helped the jury to understand the failure to mention Daniel at all that day combined with the exact timing of blocking him in indicated a previously planned attack. Michelle's lay opinion testimony on this point was properly admitted under Evidence Code section 800.

## III

### *Trial Court Response to Jury Question about Lesser Offenses*

Defendant next argues the trial court erred when responding to the jury's question about which of two charged offenses was "the lesser" offense. In so arguing, defendant asserts he was entitled to an answer that would allow the jury to show him leniency. We reject the argument.

### A.

### *Trial Court Response to the Jury*

During deliberations, the jury asked the trial court: "Clarify which is the lesser of counts 1 & 2?" Count one charged defendant with battery causing great bodily injury (§ 243, subd. (d)), and count two charged defendant with assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)).

The trial court responded, "There are no lesser crimes on Counts 1 and 2." The trial court later made a record that the jury asked "to clarify which is the lesser of Counts 1 and 2, and the response was there are no lessers on Counts 1 and 2. I'm imagining they thought one was the lesser of the other, but in any event that was the response."

### B.

### *Whether the Issue is Forfeited*

The People contend defendant forfeited the issue for lack of objection to the trial court's response to the jury question. This contention rests on the general rule that a defendant may not raise a claim on appeal without first presenting a timely objection in

the trial court. (*In re Seaton* (2004) 34 Cal.4th 193, 199.) However, forfeiture does not apply when the defendant had no opportunity to object. (*People v. Gonzalez* (2003) 31 Cal.4th 745, 752.) Here, the reporter's transcript does not include the proceedings when the jury submitted its question regarding the lesser of counts one and two. Instead, the trial court made a record after it had given its response. The record does not indicate whether counsel were present when the trial court formulated its written response to the jury. Thus, the record does not show defendant's trial attorney had the opportunity to lodge a timely objection before the trial court responded to the jury. In the absence of an indication demonstrating such opportunity, we will not deem the issue forfeited. Consequently, we consider defendant's argument on the merits.

## C.

### *Sentencing Considerations are not Properly Considered by the Jury*

Defendant does not argue the trial court failed to instruct on lesser included offenses of the charges in counts one and two. Instead, defendant's argument is premised on the proposition the trial court erred "specifically by not allowing the jury to exercise leniency toward [him] in deciding which counts to convict him of." We reject the proposition. As the California Supreme Court has held, "in cases not involving the death penalty, it is settled that punishment should not enter into the jury's deliberations." (*People v. Engelman* (2002) 28 Cal.4th 436, 442.) For this reason, a criminal defendant is not entitled to have the court instruct the jury about potential penalties. (*People v. Nichols* (1997) 54 Cal.App.4th 21, 24.) Thus, it follows defendant was not entitled to have the jury instructed about potential penalties for counts one and two so the jury could exercise leniency based on possible sentences.

11

# IV

## *Ineffective Assistance of Counsel for Failure to Object to Introduction of the 911 Call*

Defendant contends he received ineffective assistance of counsel when his trial attorney failed to object to the admission of the 911 call or to request that portions of the call be redacted. He argues much of the 911 call -- especially Michelle's argument in the background with her family -- was irrelevant and thus inadmissible. We reject the argument.

## A.

### *Right to Effective Assistance of Counsel*

The federal and state constitutions guarantee to a criminal defendant the right to the assistance of counsel. (*Strickland v. Washington* (1984) 466 U.S. 668, 684-685, 80 L.Ed.2d 674 (*Strickland*); *People v. Ledesma* (1987) 43 Cal.3d 171, 215 (*Ledesma*).) This right "entitles the defendant not to some bare assistance but rather to *effective* assistance." (*Ledesma*, at p. 215.) "To establish entitlement to relief for ineffective assistance of counsel the burden is on the defendant to show (1) trial counsel failed to act in the manner to be expected of reasonably competent attorneys acting as diligent advocates and (2) it is reasonably probable that a more favorable determination would have resulted in the absence of counsel's failings. [Citations.] '[W]here the record shows that counsel's omissions resulted from an informed tactical choice within the range of reasonable competence, the conviction must be affirmed.' " (*People v. Lewis* (1990) 50 Cal.3d 262, 288, quoting *People v. Pope* (1979) 23 Cal.3d 412, 425.)

In reviewing whether counsel's performance was deficient, we "view and assess the reasonableness of counsel's acts or omissions . . . under the circumstances as they stood at the time that counsel acted or failed to act." (*Ledesma, supra*, 43 Cal.3d at p. 216.) "As the *Strickland* court stated, 'it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of

counsel was unreasonable.' (*Ledesma,* at p. 216, citing *Strickland, supra*, 466 U.S. at p. 689.) Moreover, 'where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions.'" (*People v. Weaver* (2001) 26 Cal.4th 876, 926.)

**B.**

***Defendant's Trial Attorney Engaged in a Reasonable Tactical Approach to the 911 Call Recording***

In defendant's view, his trial attorney should have moved to exclude or redact the 911 call recording to eliminate any of the background argument Michelle had with her family. However, as defendant elsewhere notes, he was acquitted of assault using a firearm (§ 245, subd. (a)(2)) and being a felon in possession of a firearm (§ 12021, subd. (a)(1)). Also, the jury was unable to reach a unanimous verdict on the charges of assault by means likely to inflict great bodily injury (§ 245, subd. (a)(1)) and felony child endangerment (§ 273a, subd. (a)) -- charges that were dismissed on motion of the prosecutor.

The lynchpin of defense counsel's effectiveness in securing acquittals and lack of convictions on several charged counts was in convincing at least some jurors defendant did not employ a firearm. Because the defense produced no witnesses or evidence, defendant's trial attorney addressed the issue of firearm use during closing arguments where he told the jury: "There's kind of a law that allows 9-1-1 tapes to come in. It's because people are like excited and they're just blurting out how they feel and they're blurting out what they see, and that's just wow, I saw it, I just saw it. [¶] I told you in opening, review that 9-1-1 tape. Not one mention of a gun, a firearm, a weapon, a brick, a hunk of metal, nothing." With this argument, defendant's counsel demonstrated his strategy to rely on the 911 call recording to disprove defendant's use of a firearm in the attack.

13

Defendant suggests the 911 call could simply have been redacted to keep out the irrelevant portions of the recording. We reject the suggestion as incompatible with defense counsel's effective strategy to have the jury hear the entirety of the tape for the value of hearing no reference to any weapon use. Defense counsel's reasonable tactical decision to rely on, rather than object to, the admission of the entirety of the 911 call recording did not constitute ineffective assistance of counsel.

## V

### *CALCRIM No. 330*

Defendant contends CALCRIM No. 330 violated his right to a fair jury trial by bolstering the testimony of child witness, Deshawn. We reject the contention.

The trial court instructed defendant's jury with CALCRIM No. 330 as follows: "You have heard testimony from a child who is age 10 or younger. As with any witness, you must decide whether the child gave truthful and accurate testimony. [¶] In evaluating the child's testimony, you should consider all of the factors surrounding that testimony, including the child's age and level of cognitive development. [¶] When you evaluate the child's cognitive development, consider the child's ability to perceive, understand, remember, and communicate. [¶] While a child and an adult witness may behave differently, that difference does not mean that one is any more or less believable than the other. You should not discount or distrust the testimony of a witness just because he is a child."

Although defendant did not object to the instruction, we consider the claim because he contends the instruction violated his substantial rights by bolstering the testimony of Deshawn. (§§ 1176, 1259; *People v. Hillhouse* (2002) 27 Cal.4th 469, 503 [instructional error undermining the substantial rights of a criminal defendant requires no objection for appellate review].) Accordingly, we consider the claim on the merits.

14

On the merits, we reject defendant's argument. A nearly identical argument that CALCRIM No. 330 improperly bolsters a child witness's testimony was rejected in *People v. Fernandez* (2013) 216 Cal.App.4th 540 (*Fernandez*). The defendant in *Fernandez*, as in this case, argued the instruction precluded impeachment of the child witness based on the child's inability to perceive, understand, remember, and communicate. (*Id.* at pp. 558-559.) The *Fernandez* court disagreed, noting such "contentions have been uniformly rejected in published decisions rejecting the same argument with respect to CALJIC No. 2.20.1, the predecessor to CALCRIM No. 330. (*People v. McCoy* (2005) 133 Cal.App.4th 974, 979–980; *People v. Harlan* (1990) 222 Cal.App.3d 439, 455–457; *People v. Jones* (1992) 10 Cal.App.4th 1566, 1572–1574; *People v. Gilbert* (1992) 5 Cal.App.4th 1372, 1393.)" (*Fernandez*, at p. 559.)

*Fernandez* explained it is well settled CALJIC No. 2.20.1 " 'neither excessively inflates a child's testimony nor impermissibly usurps the jury's role as arbiter of witness credibility nor violates the accused's right to confront a child witness nor "require[s] the jury to draw any particular inferences from a child's cognitive ability, age and performance as a witness. Rather, it instructs the jury to consider such factors in evaluating a child's testimony." [Citation.] In . . . *People v. Jones*[, *supra*,] 10 Cal.App.4th 1566, the court held that the instruction "presupposes that the jury must make a determination of credibility, but only after considering all the factors related to a child's testimony, including his [or her] demeanor, i.e., how he or she testifies on the stand," all without ' "foreclos[ing] independent jury consideration of the credibility of a child witness." ' [Citation.] [*People v. Gilbert, supra*, 5 Cal.App.4th 1372] held that CALJIC No. 2.20.1 neither ' "lessen[s] the government's burden of proof" ' nor ' "instructs the jury to unduly inflate the testimony of a child witness" ' [citation]: "The instruction tells the jury not to make its credibility determinations solely on the basis of the child's 'age and level of cognitive development,' but at the same time invites the jury to take these and all other factors surrounding the child's testimony into account. The

15

instruction provides sound and rational guidance to the jury in assessing the credibility of a class of witnesses as to whom ' "traditional assumptions" ' may previously have biased the factfinding process.  Obviously a criminal defendant is entitled to fairness, but just as obviously he or she cannot complain of an instruction the necessary effect of which is to increase the likelihood of a fair result."  [Citation.]' (*McCoy,* at p. 979.)

"These holdings apply with equal force to CALCRIM No. 330, for the reasons explained in *McCoy*.  CALCRIM No. 330 simply instructs the jury to take into account a child's ability to perceive, understand, remember and communicate when making a credibility determination.  It does not instruct the jury to subject a child's testimony to a less rigorous credibility determination, nor does it excessively inflate a child witness's credibility."  (*Fernandez*, *supra*, 216 Cal.App.4th at pp. 559-560.)  We agree with this reasoning.

Defendant contends *Fernandez* (and by extension the cases cited therein) employs faulty reasoning because CALCRIM No. 330 "effectively gave the jury permission to ignore or excuse problems with [Deshawn's] recollection of the events" for which defendant was convicted.  We disagree.  CALCRIM No. 330 clearly advised the jury it could accept or reject Deshawn's testimony based on "all of the factors surrounding that testimony."  Nothing in CALCRIM No. 330 bolstered Deshawn's testimony or placed his credibility beyond impeachment.

We also reject defendant's reliance on CALJIC No. 2.20.1's statement that child witnesses may "perform differently" than adult witnesses.  (See *Harlan*, *supra*, 222 Cal.App.3d at p. 455, quoting CALJIC No. 2.20.1.)  Although defendant contends this phrase is different from and superior to CALCRIM No. 330's use of the phrase "behave differently" than adult witnesses, there is no meaningful difference.  Accordingly, the trial court did not err in giving CALCRIM No. 330.

16

DISPOSITION

The judgment is affirmed.


                                        HOCH        , J.



We concur:



        BUTZ        , Acting P. J.



        DUARTE   , J.


17