Filed 11/1/22  P. v. Gonzalez CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BRENT LUIS GONZALEZ,<br><br>Defendant and Appellant. | C094658<br><br>(Super. Ct. No. 62-170940) |

Defendant Brent Luis Gonzalez's car was searched after a traffic stop and officers found a firearm, loose ammunition, and an ammunition magazine.  Shortly before trial, defendant moved for a continuance to substitute in private counsel, which the trial court denied.  The jury ultimately found defendant guilty of being a felon in possession of a firearm and unlawful possession of ammunition.  At a bench trial on defendant's prior convictions, the trial court considered facts supporting defendant's prior plea to battery resulting in serious bodily injury and found this to constitute a strike, along with three other prior serious or violent felony convictions.  The trial court then sentenced defendant to two concurrent indeterminate terms of 25 years to life for the two convictions.

1

On appeal, defendant challenges his convictions and sentence on three grounds of alleged trial court error: (1) not granting him a continuance to substitute counsel; (2) finding that his past battery conviction constituted a strike; and (3) not staying one of his convictions under Penal Code section 654.[1] We shall affirm.

BACKGROUND

A.    *Pretrial matters*

By way of an amended complaint filed on December 16, 2020, and deemed an information the same day, defendant was charged with being a felon in possession of a firearm (§ 29800, subd. (a)(1)—count one); unlawful possession of ammunition (§ 30305, subd. (a)(1)—count two); misdemeanor possessing personal identifying information with intent to defraud (§ 530.5, subd. (c)(1)—count three); misdemeanor giving false identity information to a police officer (§ 148.9, subd. (a)—count four); and misdemeanor making a false report to a state agency. (§ 148.5, subd. (c)—count five.) It also was alleged defendant was personally armed with a firearm during the two felonies (§ 667, subd. (e)(2)(C)(iii)), and that defendant had four prior serious or violent felony convictions.[2] (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).)

Defendant was appointed a public defender on January 10, 2020, but later retained private counsel in November 2020. After failing to appear for a hearing on January 25, 2021, defendant was again represented by a public defender at the next hearing on February 25, 2021. On March 1, the trial court set the trial confirming conference for March 22, but it was continued to May 3. On May 3, the trial was set for July 19, 2021.

_____

[1]    Undesignated statutory references are to the Penal Code.

[2]    The allegation that defendant had suffered four prior serious or violent felony convictions was also included in the original complaint filed on January 10, 2020.

On June 8, 2021, defendant filed a *Romero*[3] motion to dismiss three of his four prior strikes. On June 30, the trial court denied defendant's motion, finding defendant's criminal history was violent in nature.

On July 12, 2021, at the pretrial conference, defendant's appointed counsel stated defendant "is requesting the Court to allow us to vacate" the trial assignment date set for July 16, "and set it out into August because he is trying to, through the help of his family . . . to hire private counsel." The prosecutor objected because "it seems premature. There's not enough information to believe the defendant actually has made contact with an attorney. He has very competent counsel, and we are ready to go." The court denied the request, finding "[t]here is no motion to continue that's been filed [with] the Court, so I will not entertain a motion to continue at this time." Defense counsel then asked, "Can we confirm the 16th? And if necessary, I can make a motion that day." The court then confirmed the trial assignment for July 16, with trial to start on July 19.

At the July 16 trial confirmation hearing, defendant's counsel said, "[Defendant] has indicated to me that his family would like to hire private counsel for him." Defendant's counsel contacted defendant's prior private counsel and told the court, "She hasn't been retained. However, [defendant] is asking for time to retain counsel. [¶] . . . [¶] He estimates that it may take a week to get the funds ready to hire that counsel. Personally, I'm prepared to go to trial. [¶] . . . [¶] I didn't give any notice of this. This is something that I had asked for last time that was denied and [defendant] is making that request again. I didn't, obviously, file a [section] 1050 [motion]." The prosecutor objected, stating the People were ready for trial, were ready for trial in March, and believed this to be a delay tactic.

---

**3**      *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

The court confirmed defendant can hire new counsel, but stated, "[T]here's not going to be an agreement to postpone." The court then asked defense counsel, "At this point, there's no motion to continue that's properly filed?" Counsel responded, "There is not. I'm prepared to go to trial." The court asked, "You're not really making an oral motion to continue at this point?" Counsel responded, "I'm not."

On July 19, during pretrial discussions, defendant pleaded no contest to the three misdemeanor charges. There was no discussion regarding a continuance of the trial.

B. *Trial and sentencing*

At trial, which began on July 22, sheriff's deputies testified to pulling defendant over for driving with expired registration on January 8, 2020. Defendant was also speeding. During a search of defendant's car, deputies found a nine-millimeter firearm in a hidden compartment in the center console, near where the driver's knee would be. They also found two live rounds of nine-millimeter ammunition in plain view elsewhere in the center console, near the cupholders, as well as a magazine containing at least 10 live rounds of nine-millimeter ammunition hidden under the passenger seat. The magazine fit into the nine-millimeter gun that was found.

The jury found defendant guilty on both felony counts and found the firearm enhancement true for each count.

Defendant had waived a jury trial on his prior convictions. At the bench trial, the prosecution presented records from the four prior convictions. For a prior section 243, subdivision (d) conviction, the trial court also reviewed a 1998 plea transcript to determine whether defendant personally inflicted serious bodily injury. This transcript, as quoted at defendant's hearing, stated the original prosecutor summarized the facts as: " 'The facts on the record are that November 29, 1997, [defendant] punched the victim . . . causing her serious bodily injury, including multiple stitches for lacerations to her head. She was knocked down on the concrete, was unconscious and was diagnosed with a concussion and with chipped teeth.' " From this, the court stated this conviction "did

4

involve personal infliction." Thus, the court found the prosecutor proved beyond a reasonable doubt defendant suffered this and three other strike convictions. The court also denied defendant's renewed *Romero* motion to dismiss the prior strikes, though it dismissed one strike allegation under section 1385.

The trial court then sentenced defendant to an indeterminate term of 25 years to life on both felony convictions, but ran the sentences concurrent. The court also sentenced defendant to six months concurrent on each of the three misdemeanors, for a total aggregate term of 25 years to life.

DISCUSSION

I

*Continuance of Trial*

Defendant first contends the trial court erred in not granting him a trial continuance so that he could retain private counsel. Defendant contends that a continuance and substitution of counsel was especially warranted by his loss of the *Romero* motion. He asserts this "error is reversible per se." We find no error.

A continuance of a criminal proceeding "shall be granted only upon a showing of good cause." (§ 1050, subd. (e).) Granting or denying a motion for continuance is left to the discretion of the trial court and will be affirmed on appeal absent a showing of an abuse of discretion. (*People v. Mickey* (1991) 54 Cal.3d 612, 660.) Reviewing courts look to the "circumstances of each case, ' "particularly in the reasons presented to the trial judge at the time the request [was] denied." ' " (*People v. Courts* (1985) 37 Cal.3d 784, 791 (*Courts*).)

A defendant's right to counsel of their choice is not absolute. (*People v. Ortiz* (1990) 51 Cal.3d 975, 982-983.) A trial court has "wide latitude in balancing the right to counsel of choice against the needs of fairness, [citation], and against the demands of its calendar." (*U.S. v. Gonzalez-Lopez* (2006) 548 U.S. 140, 152 [165 L.Ed.2d 409, 421].) The right to counsel is "carefully circumscribed," such that "the right 'can

5

constitutionally be forced to yield *only* when it will result in significant prejudice to the defendant himself or in a disruption of the orderly processes of justice unreasonable under the circumstances of the particular case.' " (*Courts, supra*, 37 Cal.3d at p. 790.)

Defendant did not make his first request for a continuance until July 12, a week before trial was scheduled to begin and after the trial had been continued at least once before. There is no evidence defendant sought to substitute his counsel in the nearly five months before trial after appointed counsel had resumed defendant's representation in February 2021. There also were four days between defendant's requests and there was no evidence defendant had made any progress on securing private counsel during this time. Instead, he made only vague assertions that he and his family "would like to hire private counsel." He also had no present ability to afford counsel, instead stating it "may" take a week to get the funds. Defendant knew how to substitute counsel and the challenges involved given that he had done it before. There is no evidence in the record justifying defendant's dilatory conduct. (See *Courts, supra*, 37 Cal.3d at p. 791 ["The record establishes that appellant engaged in a good faith, diligent effort to obtain the substitution of counsel *before* the scheduled trial date"].)

Conversely, there was evidence that a continuance would necessarily impact the court's calendar, the parties, and the administration of justice, given that the requests were made a week and then a few days before trial. All parties were ready for trial, including defendant. This means all witnesses were scheduled and ready to testify within days. Defendant asserts that "the witnesses all worked for law enforcement either in Placer or Sacramento County, and the prosecution proffered no claim that a continuance would significantly inconvenience its witnesses." This is misguided. First, in considering a request for a continuance, "the court shall consider the general convenience and prior commitments of all witnesses, *including peace officers*." (§ 1050, subd. (g)(1), italics added.) Second, it was defendant's burden to establish good cause, not the prosecutor's burden to establish inconvenience.

6

Defendant posits a continuance was still justified given the trial court's denial of his *Romero* motion on June 30, 2021, when "the reality came into focus that [defendant] now faced a lifetime behind bars." But the allegations of defendant's prior serious and violent felony convictions were included in the original complaint, filed over 17 months before the denial of the *Romero* motion. Granting a *Romero* motion to dismiss a strike is entirely discretionary. (*People v. Dryden* (2021) 60 Cal.App.5th 1007, 1029.) Underlying defendant's argument is the unreasonable assumption a discretionary decision would be made in his favor. If defendant truly believed the *Romero* decision was so important as to require private counsel if it were denied, he could and should have sought private counsel to make that motion in the first instance. Defendant also had nearly two weeks between the denial of the *Romero* motion on June 30 and when he made his first continuance request on July 12, yet he had made no material progress in hiring counsel. This undermines his argument the *Romero* denial was a fundamental change in circumstances necessitating new counsel.

Ultimately, "[t]he welfare of the people of the State of California requires that all proceedings in criminal cases shall be set for trial and heard and determined at the earliest possible time." (§ 1050, subd. (a).) Defendant's right to counsel of his choosing is important, but considering defendant's delay, defendant's lack of progress in hiring private counsel, the absence of an excuse for the delay, and the impact on the court's calendar, the trial court's denial of defendant's request for a continuance was not an abuse of discretion.

## II

### *Prior Battery Conviction*

Defendant next makes two related challenges to the trial court finding his prior conviction under section 243, subdivision (d) to be a strike: (1) defendant pled only to inflicting serious bodily injury when he pled to the offense, not great bodily injury, as required for a strike offense; and (2) the trial court performed impermissible factfinding

7

when it relied on the factual basis for defendant's plea to find great bodily injury. We again find no error.

Two or more prior convictions for violent or serious felonies, also known as strikes, requires a sentence for a subsequent felony conviction to be an indeterminate term of life, with a minimum term of 25 years. (§§ 667, subd. (e)(2)(A), 1170.12, (c)(2)(A); *People v. Acosta* (2002) 29 Cal.4th 105, 108-109.) A serious felony is any felony listed in section 1192.7, subdivision (c), whereas a violent felony is any felony listed in section 667.5, subdivision (c). (§§ 667, subd. (d)(1), 1170.12, subd. (b)(1).) It is the prosecution's burden to "prove each element of an alleged sentence enhancement beyond reasonable doubt." (*People v. Delgado* (2008) 43 Cal.4th 1059, 1065.) "On review, we examine the record in the light most favorable to the judgment to ascertain whether it is supported by substantial evidence." (*Id.* at p. 1067.)

Section 243, subdivision (d) is violated when "a battery is committed against any person and serious bodily injury is inflicted on the person." Serious bodily injury is defined as "a serious impairment of physical condition," and section 243 lists several qualifying injuries such as a concussion and bone fracture. (§ 243, subd. (f)(4).) This provision is not specifically listed as a violent or serious felony, but a felony is violent if a defendant "inflicts great bodily injury on a person," which has been charged and proved as provided in section 12022.7. (§ 667.5, subd. (c)(8).) Great bodily injury under section 12022.7 is defined as "a significant or substantial physical injury." (§ 12022.7, subd. (f).) The definitions for serious bodily injury and great bodily injury do not overlap precisely. (*People v. Taylor* (2004) 118 Cal.App.4th 11, 24 (*Taylor*).) But "California courts have long held that 'serious bodily injury,' as used in section 243, and 'great bodily injury,' as used in section 12022.7, are essentially equivalent. [Citations.]" (*People v. Johnson* (2016) 244 Cal.App.4th 384, 391 [citing over 10 cases finding these two definitions equivalent].) Thus, a conviction for section 243, subdivision (d) is considered a strike unless something in the record indicates otherwise. (*Johnson, supra*, at pp. 395-396.)

8

Defendant asserts *Taylor* requires us to depart from the usual finding that serious bodily injury is equivalent to great bodily injury. In *Taylor*, the jury found defendant guilty of battery with serious bodily injury but also found not true he had personally inflicted great bodily injury on the victim, yet the trial court still determined the battery was a serious felony. (*Taylor, supra*, 118 Cal.App.4th at pp. 18, 22.) The appellate court acknowledged " 'great bodily injury' and 'serious bodily injury' have been described as being 'essentially equivalent,' " but "they have separate and distinct statutory definitions." (*Id.* at p. 24.) Mainly, the serious bodily injury definition includes a list of specific injuries and great bodily injury does not. (*Ibid.*) The injury to the victim in *Taylor* was a bone fracture, which necessarily met the definition of a serious bodily injury, but as the jury found, does not necessarily meet the definition of a great bodily injury. (*Ibid.*) Thus, the appellate court found the trial court erred in ignoring the jury's finding by determining the defendant's battery also met the definition of great bodily injury. (*Id.* at p. 27.)

*Taylor* is an anomaly with no application to the present case. As the *Taylor* court recognized: "In the absence of any contrary indication in the record, [a trial court is] justified in applying the usual assumption that 'great bodily injury' and 'serious bodily injury' are 'essentially equivalent.' [Citation.]" (*Taylor, supra*, 118 Cal.App.4th at p. 26.) The extraordinary indication in the *Taylor* record was a jury finding that the injury was not great bodily injury. No such extraordinary indication, or any indication for that matter, exists in this record justifying departure from the traditional rule. So, under well-established case law, defendant's plea to committing serious bodily injury allows us to equate this to great bodily injury.

*People v. Arnett* (2006) 139 Cal.App.4th 1609 and *Johnson* support our finding. In *Arnett*, the defendant was found guilty of battery with serious bodily injury but "the jury did not reach a verdict on an enhancement allegation that he personally inflicted great bodily injury." (*Id.* at p. 1614.) This court did not apply "the narrow ruling of

9

*Taylor*" because "the jury did *not* make a determination on the great bodily injury enhancement." (*Id.* at p. 1615.) In *Johnson*, the appellate court followed *Arnett* and distinguished *Taylor* because there also was no contrary jury finding: "the jury did *not* find 'not true' the allegations defendant personally inflicted great bodily injury, but rather made no findings in that regard." (*People v. Johnson, supra*, 244 Cal.App.4th at p. 395.) Thus, "[u]nder the circumstances, we perceive no reason to make any distinction between 'serious bodily injury' and 'great bodily injury' for purposes of determining whether a conviction constitutes a serious felony . . . ." (*Id.* at p. 396.)

These cases confirm that in the absence of any finding that great bodily injury did not occur, the usual equivalence of serious and great bodily injury applies. This is the case here. We therefore find the trial court properly determined defendant's prior battery conviction for serious bodily injury was equivalent to a battery conviction for great bodily injury.

We also need not address defendant's secondary argument that the trial court improperly considered the factual basis of his plea to the battery charge. The trial court did not need to look at the facts of the plea to determine it constituted a strike based on the seriousness of the harm; the fact defendant pleaded to serious bodily injury was sufficient. And the trial court did not even purport to do so. It instead relied on the plea's factual basis to determine defendant personally inflicted the harm, a finding defendant does not challenge on appeal.

### III

### *Section 654*

Defendant finally contends the trial court violated section 654 when it did not stay the sentence on counts one or two because they involved a single course of conduct. We again disagree.

At the time of defendant's sentencing, section 654, subdivision (a) provided in pertinent part: "An act or omission that is punishable in different ways by different

10

provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, former subd. (a); Stats. 1997, ch. 410, § 1.) [4]

As the Supreme Court explained in *People v. Harrison* (1989) 48 Cal.3d 321, 335: "[S]ection 654 protects against multiple punishment, not multiple conviction. [Citation.] The statute itself literally applies only where such punishment arises out of multiple statutory violations produced by the 'same act or omission.' [Citation.] However, because the statute is intended to ensure that defendant is punished 'commensurate with his culpability' [citation], its protection has been extended to cases in which there are several offenses committed during 'a course of conduct deemed to be indivisible in time.' "

"Whether a defendant may be subjected to multiple punishment under section 654 requires a two-step inquiry, because the statutory reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective. [Citations.]" (*People v. Corpening* (2016) 2 Cal.5th 307, 311.) We first consider whether the different crimes were completed by a " 'single physical act.' " (*Ibid*.) "If so, the defendant may not be punished more than once for that act. Only if we conclude that the case involves more than a single act—i.e., a course of conduct—do we then consider whether that course of conduct reflects a single ' "intent and objective" ' or multiple intents and objectives. [Citations.]" (*Ibid*.)

---

[4] Effective January 1, 2022, Assembly Bill No. 518 (2021-2022 Reg. Sess.) amended section 654, subdivision (a) to read: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other." (§ 654, subd. (a).) These changes are not relevant here because the two underlying convictions carry the same term.

"It is defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible. [Citations.] We have traditionally observed if all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once. (*Neal v. State of California* (1960) 55 Cal.2d 11, 19.) [¶] If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' [Citation.]" (*People v. Harrison, supra*, 48 Cal.3d at p. 335.)

There are several cases applying section 654 in the context of firearm and ammunition possession convictions. In *People v. Lopez* (2004) 119 Cal.App.4th 132, the court held that section 654 barred multiple punishment for the defendant's convictions for unlawful possession of a firearm and unlawful possession of ammunition, based on his possession of a single loaded firearm. (*Lopez, supra*, at p. 138.) The court reasoned that while possession of an unloaded firearm could assist someone in committing another crime, such as frightening or clubbing the victim, ammunition alone cannot be used in a similar fashion, "[w]here, as here, all of the ammunition is loaded into the firearm." (*Ibid.*) Accordingly, the court found the defendant's single intent was to possess a loaded firearm. (*Ibid.*)

Two other cases—*People v. Sok* (2010) 181 Cal.App.4th 88 and *People v. Broadbent* (2020) 47 Cal.App.5th 917—have fact patterns similar to *Lopez*. In *Sok*, the defendant was convicted of two counts unlawful possession of ammunition and two counts of unlawful possession of a firearm. The appellate court concluded the trial court erred in not staying one of the unlawful possession of ammunition convictions "because the ammunition at issue in those two counts was either loaded into [the defendant's] handgun or had been fired from that gun." (*Sok, supra*, at p. 100, fn. omitted.) In

12

*Broadbent*, the defendant was convicted of selling assault weapons and selling large-capacity magazines. Relying on *Lopez* and *Sok*, this court found section 654 was violated because "the magazines were attached to and inside the rifles" so they were not "separate items of contraband." (*Broadbent, supra*, at p. 923.)

Unlike *Lopez*, *Sok*, and *Broadbent*, the two convictions here did not rely on the same objective. The pivotal fact in those cases was the ammunition being loaded in the firearms. That is not the case here. The ammunition underlying defendant's ammunition possession conviction was in two locations separate from the firearm. The firearm was hidden in a compartment near the driver's knee, while two rounds of ammunition were found in the center console, and a loaded magazine was hidden under the passenger seat. This disentangles defendant's objective and intent of firearm possession from his ammunition possession. Because defendant would have to load (or reload) the firearm with the loose ammunition or the magazine before using it, the intent for the ammunition was plainly to possess it for use on another occasion.

Defendant's arguments assume that ammunition and firearm possession convictions will always share the same objective. We disagree with this premise and conclude on the facts before us that the trial court did not violate section 654 in failing to stay either the firearm or ammunition convictions.

## DISPOSITION

The judgment is affirmed.

                                          KRAUSE       , J.

We concur:

HULL       , Acting P. J.


DUARTE      , J.

13