[No. F043279. Fifth Dist. Jan. 5, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
PABLO BAUTISTA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 1–3 and 5–7 of DISCUSSION.

## COUNSEL

Jean M. Marinovich, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Charles A. French and Jeffrey D. Firestone, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

DAWSON, J.—In March 2002, in case No. 86117, Pablo Bautista (appellant) pled no contest to assault with a firearm (Pen. Code, § 245, subd. (a)(2))[1] and admitted the offense was committed for the benefit of a gang (§ 186.22, subd. (b)(1)). He was sentenced to a term of seven years in state prison. The execution of the term was suspended and he was placed on five years' probation with various terms, including that he serve one year in jail.

In early 2003, appellant violated probation, and new charges were filed against him in case No. 103270. Following a jury trial, appellant was found guilty of count 1, discharging a firearm in a grossly negligent manner

---

[1] All further statutory references will be to the Penal Code unless otherwise stated.

(§ 246.3); count 2, possessing a firearm as a convicted felon (§ 12021, subd. (a)(1)); and count 3, shooting a firearm from a vehicle (§ 12034, subd. (d)). Allegations that the offenses were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)), that appellant had a prior strike conviction (§ 1170.12, subd. (c)(1)), and that he had a prior serious felony conviction (§ 667, subd. (a)(1)) were found true.

Appellant was sentenced to 14 years in state prison in the current case, No. 103270: the midterm, doubled, for a total of four years, plus five years each for the gang enhancement and prior serious felony enhancement on count 1. The term for count 2—four years plus an additional three years pursuant to section 186.22, subdivision (b)(1)—was imposed but stayed (§ 654). The term for count 3—four years plus an additional five years pursuant to section 186.22, subdivision (b)(1)—was imposed and ordered to be served concurrent with count 1, plus a five-year enhancement pursuant to section 667, subdivision (a)(1), which was imposed but stayed. Appellant was credited with 210 days for time served.

On appellant's prior case, No. 86117, probation was revoked and he was sentenced to seven years, concurrent, with 597 days' credit for time served.

We disagree with appellant's claims of insufficiency of the evidence and prejudicial instructional error. We agree that one of the five-year enhancements added to count 1 must be stricken. Appellant contends, respondent concedes, and we agree that a section 654 error occurred as to count 3 and that the section 667, subdivision (a)(1) enhancement imposed on count 2 must be deleted. In all other respects, the judgment is affirmed.

## FACTS

*Gang Evidence*

A stipulated gang expert, Detective Greg Lopez, explained the prison gang origins of rival Sureño and Norteño gangs and their identifications with the numbers 13 and 14 and with the colors blue and red, respectively. Lopez testified as to the criteria used to identify gang members and how their territory is marked.

According to Detective Lopez, Tulare has 100 Sureño gang members who identify themselves as the Wicked Ass Sureño gang and over 300 Norteño gang members. Typical crimes committed by the Sureño gang members include vandalism, auto theft, burglary, and homicide. The crimes are committed to intimidate or eliminate rival gang members. Respect is a notion important in gang life, and crimes often are committed in retaliation for showing disrespect.

*Prior Gang-related Offense*

Detective Lopez testified that he investigated a January 2002 drive-by shooting in which several suspects, including appellant, were arrested for attempted murder. The shooting was in retaliation for a beating suffered by a Sureño gang member at the hands of a Norteño. Lopez opined that appellant was a Sureño gang member at the time of that incident, based on his clothing, the type of crime, his association with other admitted Sureño gang members, gang graffiti found in his bedroom and on his backyard fence, and the victim's Norteño gang association.

*Current Offense*

At approximately 3:30 p.m. on an afternoon in January 2003, Robert Barrier and a neighbor child were putting newspapers in the backseat of a car in preparation for a paper route. Barrier heard gunfire coming from the corner. He looked and saw a brownish tan, light-colored, four-door "70 or something" car with three occupants between the ages of 17 to 20. Barrier was approximately 30 feet from the car as it passed him at about 25 to 35 miles per hour. The passenger side of the vehicle was toward Barrier, who ran to the curb and watched as the car turned the corner. Barrier saw the last one or two shots fired from a small handgun in the shooter's hand, which was pointed straight up. The shooter was in the right front passenger seat and, after the last shot, he brought his arm back inside the car.

Barrier reported the shooting to Officer James Kelly. Barrier was able to describe the car, the position of the occupants, their clothing, and their approximate ages, but he had not seen their faces. Kelly broadcast the information.

Detective Lopez heard the broadcast and arrived in the area just west of the shooting, where he saw a brown, four-door Dodge Aries parked in the alley behind appellant's home. Avelino Vasquez was standing near the car and, when he saw Detective Lopez, Vasquez walked into the backyard of appellant's residence.

Detective Lopez saw appellant in the backyard and asked him to stop. Appellant looked at the officer and then ran toward the front of the house. Lopez jumped a fence and ran to the front yard. He announced the officers' presence and stated he needed to talk to the people inside. When no one came out of the house, Lopez and other officers entered.

Inside the residence, Lopez detained six individuals and arrested three of them. Appellant wore a dark blue, hooded, Nike brand sweatshirt and dark pants. Alberto Garcia wore a Nike brand sweatshirt, and Vasquez had on a blue hooded sweatshirt. Of the three others in the residence, who were not arrested, Andy Ramirez wore a dark blue shirt with a gray Raiders sweatshirt over the shoulder; Marcelino Ochoa wore a blue short-sleeved shirt, blue jeans, a blue belt and blue slippers; and appellant's brother Bernardo wore a gray, hooded, Nike brand sweatshirt.

Using gang membership identification criteria, Detective Lopez testified to his opinion that, at the time of the shooting, appellant, Garcia, Vasquez, and Ochoa were all Sureño gang members. He did not think Ramirez, who was visiting Bernardo, was a gang associate or member; Bernardo was a gang associate through appellant, his brother, but was not yet a member.

Within a few minutes of the shooting, Officer Kelly took Barrier three and a half blocks to an alley where Barrier positively identified the vehicle. About 10 minutes after that, Officer Kelly showed Barrier three subjects from 30 to 40 feet away. By his clothing, which Barrier described as a hooded sweatshirt with a dark stripe, Barrier identified appellant as the shooter. Barrier also identified the driver, who bore a white stripe on his sleeve.

Detective Lopez was familiar with appellant's home from prior contacts, and he knew which room was appellant's bedroom. He searched the room and found several items with gang graffiti and lots of blue clothing and "rags." On a nightstand was a metal jar with "X3," "13," "Wicked," "Surenos," and "Sur" written on it. Another container had "13" and "WAS" on it. A .22-caliber shell was between the two containers. A film canister held five live .44-caliber rounds. Lopez opined that appellant was still a gang member based, in part, on the gang graffiti in appellant's room and more graffiti on a backyard fence.

A .22-caliber rifle with the butt stock cut off was found in the side yard of the property next to appellant's house. The rifle had one live round in the chamber and ten .22-caliber hollow-point rounds in the magazine of the weapon. The rounds were the same type found in appellant's bedroom. Barrier testified that he did not see that weapon at the shooting.

Following advisement of his *Miranda*[2] rights, appellant told Detective Lopez that he had been a member of the Wicked Ass Sureño gang for a long time. He denied being involved in the shooting, and he claimed his finger-prints would not be found in the car.

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602].

At the scene where the shots were fired, there was gang-style graffiti written on a fence, including "WAS." Detective Lopez noted that the "WAS" had been scratched off or had a line drawn over it. This indicated to him that the Wicked Ass Sureño gang had marked that territory as their own, but the Norteño gang had crossed out the marking in disrespect. A gang would typically retaliate for such conduct by returning to the area, crossing out the new gang's name and placing more graffiti in its place. The retaliation could also escalate into a shooting or a fight at that location.

Detective Lopez opined that the shooting was done for the benefit of, and in association with, the Sureño gang because the graffiti had been crossed out by the Norteño gang. He opined that such crimes benefited the gang in intimidating other gangs, and also increased the shooters' status in their own gang. Lopez testified that this shooting was distinguishable from general "shooting up in the air" because the individuals in the car were gang members and the offense occurred directly in front of the area where the gang name was crossed out.

Gunshot residue tests were performed and revealed that appellant had particles consistent with gunshot residue on both his hands. This result led to three possibilities: (1) appellant discharged a firearm; (2) he touched a surface that had gunshot residue on it; or (3) he participated in a lead-related hobby or occupation. Garcia was also tested and "highly specific particles of gunshot residue" were found on both his hands.

*Defense*

Maria Bautista, appellant's mother, testified that two weeks prior to the incident, appellant had moved from his bedroom to the living room, and his former bedroom was then used by Bernardo's friend Ochoa. On the day of the incident, Mrs. Bautista testified, she came home from work at 2:45 p.m. and found appellant, Bernardo and Garcia there. The police arrived 40 to 45 minutes later and neither of her sons had left in the interim. Mrs. Bautista testified that she loved appellant and would do anything to protect him.

Avelino Vasquez testified that he was in custody at the time of trial for allowing someone to shoot from his vehicle on the date in question. He claimed he drove alone when the shots were fired, but said nevertheless he

did not do the shooting. He testified that he was a Wicked Ass Sureño gang member and had gang tattoos, but he claimed not to know what the letters W-A-S stood for.

Marcelino Ochoa testified that, at the time of the incident, he had been staying in appellant's living room for over a week and appellant had his own room. They were friends and fellow WAS members. Ochoa testified that he was with "Andy Garza" and appellant in the carport when he heard gunshots on the day in question, and they were still in the carport when the police arrived.

Appellant testified in his own defense that, on the day of the incident, Vasquez arrived at the house about noon and they "kick[ed] back." Shortly after 2:00 p.m., he went to the store in Vasquez's car with Vasquez, Ochoa and Ramirez. Appellant was in the back. Shortly before 3:00 p.m., Vasquez dropped appellant at home and left with Garcia to pick up Bernardo at school. When Vasquez returned, he parked the car in the alley. Just before the police arrived, Vasquez, Garcia and Bernardo exited the car. Appellant denied shooting a gun out of the car that day. He testified that he had no job or hobby involving the use of lead, and he did not handle any ammunition on that date.

Appellant testified that the letters W-A-S stood for his gang, the Wicked Ass Sureños. He had those initials tattooed on his hand.

## DISCUSSION

1.–3.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

4. *Failure to Instruct on Whether Current Felony Was a Serious Felony for Enhancement Purposes*

Appellant contends the trial court erred under both state law and federal constitutional law in failing to submit to the jury the question whether his current conviction on count 1, discharge of a firearm in a grossly negligent manner in violation of section 246.3, is a serious felony for purposes of two enhancements attached to that count. Both of those enhancements—that is, enhancement under section 667, subdivision (a)(1) and enhancement under

---

*See footnote, *ante*, page 646.

section 186.22, subdivision (b)(1)(B)—do require that the current offense be a serious felony. Section 667, subdivision (a)(1) states, in pertinent part: "In compliance with subdivision (b) of Section 1385, any person convicted of a serious felony who previously has been convicted of a serious felony . . . , shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately. The terms of the present offense and each enhancement shall run consecutively." Section 667, subdivision (a)(4) in turn states, "As used in this subdivision, 'serious felony' means a serious felony listed in subdivision (c) of section 1192.7."

Section 186.22, subdivision (b)(1) carries three possible additional terms depending on the nature of the current felony: "(A) Except as provided in subparagraphs (B) and (C), the person shall be punished by an additional term of two, three, or four years at the court's discretion. [¶] (B) If the felony is a serious felony, as defined in subdivision (c) of Section 1192.7, the person shall be punished by an additional term of five years. [¶] (C) If the felony is a violent felony, as defined in subdivision (c) of Section 667.5, the person shall be punished by an additional term of 10 years." Appellant's sentence on count 1 was enhanced by five consecutive years pursuant to section 186.22, subdivision (b)(1)(B).

Section 1192.7, subdivision (c) lists the crimes which constitute serious felonies. The crime of discharging a firearm in a grossly negligent manner under section 246.3 is not specifically listed. Instead, such a crime qualifies as a serious felony only if certain conduct relating to the offense is proved. (*People v. Leslie* (1996) 47 Cal.App.4th 198, 201 [54 Cal.Rptr.2d 545].) As pertinent here, section 1192.7, subdivision (c) defines a serious felony to include "any felony in which the defendant personally uses a firearm," as well as "any felony offense, which would also constitute a felony violation of Section 186.22." (§ 1192.7, subd. (c)(8), (28).)[3]

### A. *The section 667, subdivision (a) enhancement*

To clarify: there were two alternative ways in which the appropriate finder of fact could have found that appellant's count 1 offense was a serious felony for purposes of section 667, subdivision (a). These were (1) by finding the

---

[3] As appellant notes, subdivision (c)(23) of section 1192.7 makes "any felony in which the defendant personally used a dangerous or deadly weapon" a serious felony. We need not discuss this alternative, however, because it is clear that the weapon involved here was a firearm.

offense to have included personal use of a firearm (§ 1192.7, subd. (c)(8)), or (2) by finding the offense to be a "felony offense, which would also constitute a felony violation of Section 186.22." (§ 1192.7, subd. (c)(28).)

As to subdivision (c)(8) of section 1192.7, it is clear that appellant was entitled, under federal constitutional law, to a jury determination whether his count 1 offense included personal use of a firearm and was thus a serious felony. (See *People v. Taylor* (2004) 118 Cal.App.4th 11, 23–24, 28–30 [12 Cal.Rptr.3d 693] [under *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348], accused has right to jury trial regarding question whether his/her current offense is a conduct-based serious felony under § 1192.7, subd. (c)(8)].)[4] Here, there was no jury trial waiver, either of the question whether the offense charged in count 1 was a serious felony or as to the enhancements in general and, though the jury did make findings as to the enhancements, it was not instructed to decide the question whether the count 1 offense included personal use of a firearm. Further, examination of the record reveals that the prosecutor argued the count 1 offense to the jury on alternative theories: that appellant was the shooter of the firearm, or that he was an aider and abettor of the offense, or a conspirator. Finally, the evidence did not overwhelmingly establish that appellant did, in fact, personally use a firearm. Respondent concedes that, in these circumstances, it was error not to submit the question of personal use to the jury (as to the enhancement) and that we cannot say the error was harmless.

As to the alternate basis upon which the fact finder could have based the section 667, subdivision (a) enhancement—by finding the count 1 offense to constitute a "felony violation of Section 186.22" pursuant to section 1192.7, subdivision (c)(28)—it is less clear that appellant's jury trial right was infringed. In *People v. Briceno* (2004) 34 Cal.4th 451 [20 Cal.Rptr.3d 418, 99 P.3d 1007], the California Supreme Court held that "section 1192.7(c)(28) includes within its ambit any felony offense committed for the benefit of a criminal street gang under the section 186.22(b)(1) gang sentence enhancement." (*Id.* at p. 459.) The jury here did determine that appellant committed the count 1 offense "for the benefit" of a gang within the meaning of the gang enhancement. The parties agree that, where the jury, in connection with other instructions, has necessarily determined adversely to the defendant an issue upon which it was not instructed, no error, or at least no

---

[4] Given this conclusion, we find it unnecessary to discuss state statutory law. (See *People v. Epps* (2001) 25 Cal.4th 19, 28 [104 Cal.Rptr.2d 572, 18 P.3d 2] [§ 1025]; *People v. Yarbrough* (1997) 57 Cal.App.4th 469, 477 [67 Cal.Rptr.2d 227] [§ 969f].)

prejudice, is shown. (Cf. *People v. Taylor, supra,* 118 Cal.App.4th at pp. 22–23 [when jury has found defendant guilty of one of the serious felonies specifically enumerated in § 1192.7, subd. (c), trial court may find that felony serious as a matter of law].) Thus, if *Briceno* applies here, any infringement of appellant's jury rights was harmless. (See *People v. Sengpadychith* (2001) 26 Cal.4th 316, 326 [109 Cal.Rptr.2d 851, 27 P.3d 739] [prejudice from *Apprendi* error judged under *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]].)

Appellant argues that *Briceno* applies only where the question is whether a prior conviction was for a serious felony, and not where the question pertains to the current offense. As to a current offense, according to appellant, it can be a serious felony under section 1192.7, subdivision (c)(28) only if it is an independent felony offense proved under section 186.22, subdivision (a). Such an independent current offense, appellant contends, was neither charged nor proven here. Neither, according to appellant, can it be said that the jury's finding on the gang enhancement charged pursuant to section 186.22, subdivision (b) constitutes a substitute for a finding on subdivision (a), which has different and distinct requirements of proof.[5]

Respondent counters that, while *Briceno* does make a distinction between current and former offenses enhanced by gang findings, the opinion holds only that a court is not permitted to "bootstrap" a current felony with a gang enhancement into both a serious felony for purposes of section 667, subdivision (a) and a felony subject to the five-year additional sentence prescribed by section 186.22, subdivision (b)(1)(B). Thus, according to respondent, the jury's finding here that appellant did commit the count 1 offense under the circumstances specified in section 186.22, subdivision (b)(1) is tantamount to a finding that the offense was a serious felony, and no prejudicial infringement of appellant's jury trial right has occurred.

While we agree that there are two possible ways in which to read the opinion in *Briceno,* we believe respondent's reading to be correct. We quote:

". . . The Court of Appeal was apparently concerned that if section 1192.7(c)(28) made *all* gang-related felonies serious felonies, a defendant convicted of a gang-related felony would never be punished under section

---

[5] A violation under section 186.22, subdivision (a) requires proof of two elements which are not part of the gang enhancement: active participation in any criminal street gang and "knowledge that its members engage in or have engaged in a pattern of criminal gang activity." (*People v. Herrera* (1999) 70 Cal.App.4th 1456, 1467, fns. 11 & 12 [83 Cal.Rptr.2d 307].)

186.22(b)(1)(A), the sentence enhancement that applies where the defendant is convicted of a felony that is gang related, but would always be subject to the sentence enhancement for a serious felony that is gang related under section 186.22(b)(1)(B), rendering section 186.22(b)(1)(A) surplusage. Not so.

■ ". . . [S]ection 186.22(b)(1)(A), (B), and (C) speak to an event that occurs in the current proceeding. Section 1192.7, subdivision (c), on the other hand, comes *into play only if the defendant reoffends*, at which time any *prior* felony that is gang related is deemed a serious felony. Thus, any felony that is gang related is not treated as a serious felony in the current proceeding, giving effect to section 186.22(b)(1)(A). [Citation.]

"Not only does this interpretation give meaning to section 186.22(b)(1)(A), (B), and (C), it also avoids the impermissible bootstrapping that would occur if any felony that is gang related is also deemed serious in the current proceeding. Specifically, while it is proper to define any felony committed for the benefit of a criminal street gang as a serious felony under section 1192.7(c)(28), it is improper to use the *same* gang-related conduct *again* to obtain an additional five-year sentence under section 186.22(b)(1)(B) . . . ." (*People v. Briceno, supra,* 34 Cal.4th at pp. 464–465, fn. omitted.)

We therefore affirm the addition of a five-year enhancement term to appellant's sentence on count 1 pursuant to section 667, subdivision (a), on the basis the jury's finding on the section 186.22, subdivision (b)(1) enhancement was tantamount to a finding that the offense in count 1 was a serious felony pursuant to section 1192.7, subdivision (c)(28). (See *People v. Sengpadychith, supra,* 26 Cal.4th at p. 326 [prejudice from *Apprendi* error]; cf. *People v. Taylor, supra,* 118 Cal.App.4th at pp. 22–23 [court may find a specifically enumerated felony to be serious].)

B. *The section 186.22, subdivision (b)(1)(B) enhancement*

The trial court imposed a second consecutive five-year enhancement term on count 1 pursuant to section 186.22, subdivision (b)(1)(B). This was precisely the bootstrapping of which the Supreme Court spoke in *Briceno.* (*People v. Briceno, supra,* 34 Cal.4th at pp. 464–465.) We therefore reverse this enhancement and will remand to the trial court for resentencing pursuant to section 186.22, subdivision (b)(1)(A) on count 1.

5.–7.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 646.

## DISPOSITION

The convictions on all counts in this matter are affirmed, as is the judgment, except as indicated in parts 4 and 5, *ante*, with regard to counts 1 and 3. The clerical error in connection with count 2 must be corrected. The matter is thus remanded for resentencing and recalculation of custody credits.

Cornell, Acting P. J., and Gomes, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 13, 2005.