Filed 1/7/21  P. v. Reynoso CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B297989 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. Nos. BA425009-10, BA425009-11) |
| v. | |
| ALBERTO REYNOSO, | |
| Defendant and Appellant. | |
| THE PEOPLE, | B299317 |
| Plaintiff and Appellant, | |
| v. | |
| GERARDO R. ROJAS, | |
| Defendant and Appellant; | |
| ALBERTO REYNOSO, | |
| Defendant and Respondent. | |

CONSOLIDATED APPEALS from judgments of the Superior Court of Los Angeles County, Katherine Mader, Judge. Affirmed.

Susan Morrow Maxwell, under appointment by the Court of Appeal, for Defendant and Appellant and Defendant and Respondent Alberto Reynoso.

Jackie Lacey, District Attorney, Phyllis C. Asayama, Matthew Brown and John Niedermann, Deputy District Attorneys, for Plaintiff and Appellant.

Gloria C. Cohen, under appointment by the Court of Appeal, for Defendant and Appellant Gerardo R. Rojas.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael R. Johnsen and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

_____

All parties assert sentencing error in this case. The People allege the trial court abused its discretion when it struck several prior strike convictions of Alberto Reynoso and Gerardo Rojas in the interest of justice. Reynoso and Rojas contend the court erred when it imposed two 5-year serious felony sentence enhancements pursuant to Penal Code section 667, subdivision (a)(1).[1] We conclude the trial court acted within the

---

[1] All undesignated statutory references are to the Penal Code.

2

scope of its discretion when it struck the prior strikes and imposed the sentence enhancements. We affirm the judgments.

## FACTUAL AND PROCEDURAL BACKGROUND

Reynoso and Rojas were among 13 defendants in a large, multi-year criminal prosecution of Mexican Mafia members and affiliates alleged to have participated in an extortion ring involving the collection of "taxes" from gangs and within state prisons. In the first amended information, Reynoso and Rojas were charged with conspiracy to commit extortion (§§ 182, subd. (a)(1)), 520). This offense was alleged to have been committed for the benefit of, at the direction of, and in association with a criminal street gang pursuant to section 186.22, subdivisions (b)(1)(A) and (b)(4). Reynoso was alleged to have suffered three prior strike convictions, and Rojas two prior strike convictions, for the purposes of section 667, subdivision (a)(1) and the "Three Strikes" law (§§ 667, subds. (b)-(j), 1170.12, subds. (a)-(d)).

Reynoso, Rojas, and another defendant were the final defendants to resolve the charges against them. Both Reynoso and Rojas entered open pleas[2] of no contest to the conspiracy charge, admitted one of the 72 overt acts alleged in the amended information, and admitted the gang enhancement and prior conviction allegations.

---

[2] An open plea is one by which the defendant is not offered any promises. (*People v. Williams* (1998) 17 Cal.4th 148, 156 (*Williams*).) The defendant "plead[s] unconditionally, admitting all charges and exposing himself to the maximum possible sentence if the court later chose to impose it." (*Liang v. Superior Court* (2002) 100 Cal.App.4th 1047, 1055–1056.)

In March 2019 the trial court held a full-day sentencing hearing. The court had prepared independently for the hearing, advising counsel at the start of the hearing that "what I have done is looked at all the records, the public records, or the records in the court file, and have taken judicial notice of everything that is in the court files of all the 13 original defendants in this case." The court explained, "I believe that my role for each of the defendants before me is to look at the seriousness of their conduct and their prior history and come up with an appropriate sentence. So in order for me to do that properly, I decided it would be appropriate for me to look at the prior history, the activities alleged in this case[,] and the sentence that was given to the other nine[3] defendants in that case. [¶] I have accumulated a number of records. Some are preliminary hearing transcripts from other proceedings. Some are prior records of prior cases, including the facts underlying some of the prior convictions for the defendants in front of me in their prior strikes. These are all court files." The court made the materials it reviewed available to counsel.

The court first reviewed the roles played in the extortion ring by the defendants who had already been sentenced, as well as their sentences, because the court "believe[d] that my role here is to try to fit in . . . these defendants' conduct in this case and their prior record with everything that happened to the other nine defendants who were charged with the same conspiracy to commit extortion." The court conducted this review on the record

---

[3]     One other defendant had entered into a plea agreement but had not been sentenced, and the court indicated this defendant did not enter into its sentencing analysis.

for the purposes of appellate review, because "any reviewing court would want to make sure that I did not make a decision that was completely out of whack."

After discussing the previously-sentenced defendants' conduct, criminal history, and sentences, the court turned to Reynoso. The court described in detail Reynoso's conduct in the larger conspiracy: In January 2014, a high level Mexican Mafia member, Emiliano Lopez, instructed a confidential informant to contact Reynoso in Folsom State Prison because Reynoso was going to assume the job of collecting certain taxes; Reynoso told the informant he would collect money in the prison and send it to his wife, and also identified the people who would be collecting money in other prisons; the informant was informed in March 2014 that Reynoso worked for Lopez; Reynoso's wife told the informant she planned to send heroin into the prison at Reynoso's request, and asked how much of the profit to give Lopez. In telephone calls Reynoso discussed money and money orders and inquired into an associate's murder.

The court also recited Reynoso's criminal history, including his three prior strikes. In 1990 he was charged with murder, which was reduced to manslaughter (§ 192), and sentenced to seven years in state prison. This conviction, his first strike, "had to do with the burglary of some cars with some other people, a fight with somebody else who may or may not also have been burglarizing cars. The defendant and his accomplices are alleged to have beaten the victim to death." In 1996, Reynoso was sentenced to county jail for 180 days for misdemeanor vandalism. Also in 1996, he was sentenced to 32 months in prison for being a felon in possession of a firearm (§ 12021). He committed a Vehicle Code violation in 1998, and in 1999 he was sentenced to

two years in state prison for assault with a deadly weapon other than a firearm (§ 245, subd. (a)(1)) for an incident arising out of a child custody dispute. The court considered this crime, Reynoso's second strike, more serious than the short sentence would have suggested, as he had pursued the victim with a knife. Finally, in 2002, Reynoso was sentenced to 18 years in state prison for making criminal threats (§ 422), his third strike, after he absconded from parole, fired a gun in the air, threatened to kill some people, and possessed a firearm and cocaine. The court concluded, "So that is what I have learned about Mr. Reynoso in terms of the facts of this case and his prior record," and invited counsel to provide any other information for its consideration.

Reynoso's counsel, who advocated for a sentence "in the low teens," argued Reynoso was a late-comer and minimal participant in the criminal scheme, he was commanded to participate by a person connected to a main member of the Mexican Mafia, and he knew he would be in danger if he did not comply. "The extent of Mr. Reynoso's involvement spans about five months that the People are able to document. The [money] transfers and the money order in total, I think, come out to somewhere in the $800 range. And that's the extent of his participation with this organization, solely to avoid being the victim and the target that some of the co-defendants . . . were when they didn't want to quote, unquote, participate anymore."

Reynoso's counsel mentioned one codefendant who had actively participated in the criminal scheme, had a prior strike, and received an eight-year sentence, and another who was very involved in the crimes but had no prior strikes, who received six years. The court responded, "Well, you have to also be cognizant of the type of strikes. I mean, your client's prior behavior and his

6

18 years that he got for [making criminal threats] is on the top level of egregious prior behavior."

Counsel agreed and said Reynoso accepted responsibility and did not mean to minimize his prior conduct. However, "[i]n this particular case the only real consequence that anybody is aware of is that [Lopez] would pay his kids money out of the money he collected. There was never any evidence that the money was going back into [the Mexican Mafia], back into buying firearms or narcotics or anything like that. [Lopez] was just sending the money to his family."

Reynoso personally addressed the court, acknowledging his criminal history and asking the court to consider that he was young when he committed his crimes but was now 46 years old. When he was not in prison he had a steady job; he studied electrical work in trade school and was close to graduating; and he dreamed of becoming an electrician. He worked with children, coached baseball, and was a father, grandfather, brother, and son.

The prosecutor advocated for a sentence of 30 years to life. He argued the person who instructed Reynoso to get involved in the criminal scheme was not a major Mexican Mafia player. While the prosecutor agreed Reynoso's period of involvement was at the end of an investigation that lasted almost two years, and the total amount of money he was known to have collected was not very high, Reynoso was nonetheless "very much involved as a high associate within the Mexican Mafia, well[-]regarded and trusted." He was "still in up to his neck in the Mexican Mafia trying to get ahead and working at it." Striking prior strikes was not appropriate because Reynoso did not in any way fall outside the Three Strikes scheme: His prior strikes were violent. He

participated in beating a man to death.  While the prosecutor argued Reynoso deserved a 25-years-to-life sentence plus three 5-year sentence enhancements, he could envision the court striking two of the three enhancements under section 667, subdivision (a) on the basis of Reynoso's age.

The court then reviewed Rojas's participation in the crime and his criminal history.  Rojas had texted the confidential informant in 2013 about the collection of money, texted the informant that a team was "hungry and anxious to get at" others, texted "they would have fun with" a Pasadena gang if it did not cooperate, collected money from a Pasadena gang for Lopez in January 2014, and promised to get money "from every joint." Rojas had committed vandalism as a juvenile in 1992.  He was convicted of his first strike, assault with a firearm (§ 245, subd. (a)(2)), in 1995 after an altercation in which he shot someone in the face, and he received a three-year sentence.  He committed more vandalism, then domestic violence, and in 2003, he committed an assault with great bodily injury with a gang allegation (§ 245, subd. (a)(1)), his second strike.  Rojas's subsequent crimes were of decreasing seriousness:  driving under the influence, misdemeanor assault and concealed dirk or dagger, and a felony driving under the influence with prior conviction that resulted in a two-year sentence in 2013.

Rojas's counsel described him as "overall . . . one of the least involved individuals" prosecuted and a "fungible" foot soldier rather than a planner of crime.  Rojas's involvement in the entire multi-year tax collection scheme lasted only three months.  He had reported that his partners were not doing what they were supposed to do and wanted to take over collections for Pasadena.  Rojas made a number of phone calls over the three

months and collected $1,200. Counsel acknowledged the seriousness of the request to have "fun" with nonpaying parties but said Rojas was under pressure at the time. Counsel pointed out that other male defendants who were more actively involved in the conspiracy received sentences of between seven and 13 years; while those defendants did not have two prior strikes, Rojas's second strike was only a strike because it had been committed for the benefit of a gang. The female defendants had fared even better: they were integral parts of the conspiracy but one received a suspended sentence of eight years, and the other six or seven years.

Rojas's counsel described the assault with a firearm as "a terrible offense," but pointed out Rojas had been 18 years old at the time. Rojas's drunk driving offenses reflected his problem with alcohol and being around other gang members. He was a hard worker who worked at a packing company for six months before his arrest. He lived at home when not in jail, and he was close to his family, who had been involved and supportive during the criminal proceedings. His family support and employment "show that he has some caring and some ability beyond [what] we usually see." Rojas had been in jail for four years already, two of which were in "the hole" not because of bad behavior but due to policy; it took months to get him moved to the general population so he could get an education. Counsel was unaware of Rojas having any problems in county jail. In light of Rojas's attempts to educate himself, his family support, his ability to work hard if he stayed sober, and the hard time he had already served, Rojas's counsel asked the court to reach a sentence of "ten years by striking the prior, by finding the midterm or high term, and then

by adding the lesser period of time for the gang involvement that will give it a serious crime."

The prosecutor sought a 30-years-to-life sentence, arguing Rojas's texts and calls showed he was "all in" and actively sought permission to use violence. He was "as helpful as he [could] possibly be" to the Mexican Mafia, and he knew what he was doing. Rojas's conduct constituted multiple completed extortions. His criminal history was lengthy and serious. Rojas's behavior was "not the actions or conduct of someone who falls outside the scope of the Three Strikes scheme." As with Reynoso, Rojas's age was in his favor, but the prosecutor argued reducing a sentence merely because of a defendant's age was inappropriate. The prosecutor distinguished the conduct and criminal history of the defendants who received lighter sentences and said Rojas "st[u]ck out in terms of his conduct and the nature of his conduct" and his informed willingness to go the extra mile for the Mexican Mafia.

The court acknowledged its decision whether to strike a strike was a matter of discretion that had to be supported by reasons placed on the record. It found Reynoso and Rojas were entrenched associates of the Mexican Mafia who had engaged in criminal behavior for decades and had not outgrown the criminal behavior of their youth. "What I saw in looking at the records is that while even people whose activity seems to decrease over the years in seriousness, such as Mr. Rojas, he still was very actively tangled up and engaged in Mexican Mafia activity after his last non-serious offense, the DUI with the priors. I'm not saying it's not serious, but nonviolent or gang-related type offense. So all of a sudden he's back being involved in the Mexican Mafia again, which seems like everybody really was. [¶] And . . . all of our defendants are mature. They're grown men. They may have

10

gotten married, and they may have children and such, but this playing gang members has never really stopped. And it's despite the fact that they have the love of their family and family members." That love and support "has not really stopped the behavior." The court opined the defendants would be associated with the Mexican Mafia for the rest of their lives. They had not debriefed or taken steps to disassociate.

The court said, "It is disturbing to me that—and I see this so often in the criminal justice system[]—that depending upon the prosecutor, depending upon the different head deputy, there are different ways of looking at cases that make tremendous differences in people's lives. [¶] So some people who were charged in this case, who are just, to me, as hard-core as the defendants in front of me, they inexplicably received more lenient sentences." The court acknowledged the devastating impact of the Mexican Mafia and other gang activity in many communities, and it said it was not reluctant to impose third sentences in third strike cases when appropriate. But in this case, the court said, "[w]e don't have anybody who was assaulted or killed, or we don't have a situation where there's an act of violence that's actually carried out. We have threats that are made by various people but not carried out. [¶] So while I really do consider the conduct to be very serious and threatening to everybody who wants to walk the streets, I can't equate the people getting life sentences for murder and attempted murder and discharge of a gun by a gang member and great bodily injury and those sorts of things. I cannot relate this to conspiracy to commit extortion even in furtherance of a gang. [¶] The victims, quote, unquote, in this case are street gang members themselves. There's never been, as I understand it, any specific victim who has been identified who

11

has testified . . . they felt fear in a classic case of extortion unless they paid up to any of these . . . individuals."

Reynoso, the court said, had been sentenced to seven years for manslaughter in 1990. "And in order to reach the sentence that I am going to impose, which I believe is appropriate in this case, which would be 23 years, I do need to strike that strike." While it was willing to strike the 1990 strike, the court said Reynoso's later criminal threats strike "definitely should not be struck."[4] The court stated it would select the high term of four years for the extortion, double it pursuant to the Three Strikes Law, add the high term of four years for the gang enhancement allegation, and impose two 5-year enhancements for serious felony convictions, for a total of 22 years in state prison. The trial court indicated its intent to strike one of Rojas's strikes and to select the high term for the extortion, doubled, plus the high term for the gang enhancement and two 5-year serious felony conviction enhancements, also a total of 22 years in prison.

The court imposed sentence at subsequent hearings. For Reynoso, the court imposed the 22-year sentence it had previously announced. After further argument, the court selected the mid-term sentence for Rojas rather than the high term sentence it had earlier indicated, "because I do believe that in weighing the responsibility of Mr. Rojas compared to everybody else in this case and understanding that he had two prior strikes, but also understanding that there has been a lengthy period of time since the last strike, that his last 16 years the crimes have

---

[4]     The court did not mention Reynoso's assault with a deadly weapon strike at this hearing but later clarified it was striking two strikes.

been decreasing in seriousness and basically as a result of alcohol abuse and the fact that the conversations that were recorded that we know about[,] at least[,] really were of a briefer period of time than some of the other defendants. I think that mid term on the underlying offense is appropriate." Rojas was sentenced to 20 years in prison.

The People and Reynoso appealed. Rojas joined Reynoso's claim of sentencing error by filing a supplemental respondent's brief.

## DISCUSSION

### I. Prior Strikes

In deciding whether to strike a prior strike conviction in the interest of justice (§ 1385), a trial court may not consider "factors extrinsic to the [Three Strikes] scheme, such as the mere desire to ease court congestion or, a fortiori, bare antipathy to the consequences for any given defendant." (*Williams, supra*, 17 Cal.4th at p. 161.) The court " 'must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' " (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).)

The People allege the trial court erred when it struck two of Reynoso's prior strike convictions and one of Rojas's prior strikes pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497. We review the trial court's decision for abuse of discretion. (*Carmony, supra*, 33 Cal.4th at p. 376.) This standard of review "asks in substance whether the ruling in question 'falls outside

13

the bounds of reason' under the applicable law and the relevant facts." (*Williams, supra*, 17 Cal.4th at p. 162.) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' " Second, a decision will not be reversed merely because reasonable people might disagree. An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge. "Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, at pp. 376–377.) Applying this standard, we find no abuse of discretion.

It is evident from the record the court invested considerable time and effort deciding the appropriate sentences for these defendants and exercised informed discretion in selecting their sentences. Prior to the sentencing hearing, the court collected and reviewed the defendants' criminal history and examined their conduct and roles in the present matter, the conduct and roles of other defendants, and the outcomes for the other defendants. During the extensive sentencing hearing the court demonstrated a thorough knowledge of the relevant facts and sentencing considerations.

Looking to Reynoso and Rojas's personal characteristics, the court saw little redeeming value. The court understood the gravity of their criminal history, which in the case of Rojas did

14

include crimes of decreasing seriousness, and it had little hope they would ever stop associating with the Mexican Mafia. In assessing the nature and circumstances of their present felonies and prior serious and/or violent felony convictions, however, the court concluded the concededly limited involvement of Reynoso and Rojas and their personal conduct in an ultimately nonviolent extortion racket restricted to gang members did not warrant subjecting them to 25-years-to-life sentences in prison. This analysis was appropriate under section 1385. The California Supreme Court has held in assessing the nature and circumstances of the defendant's present felonies, "a trial court's factual determinations with regard to the nature and circumstances of a defendant's triggering offense may play a significant role in determining the sentence that is actually imposed upon the defendant under the Three Strikes law." (*In re Coley* (2012) 55 Cal.4th 524, 560.) The California Supreme Court has also authorized trial courts to consider as part of the nature and circumstances of a defendant's past and present convictions information "suggesting that the offenses were mitigated either in the manner of their commission (for example, an offense was committed in a less serious or violent manner than would normally be expected of such a crime) or in the level of defendant's participation (for example, defendant played a subordinate role in the commission of the offense)." (*People v. Wallace* (2004) 33 Cal.4th 738, 753–754 (*Wallace*).)

Ultimately, the court concluded that although the defendants' background, character, or prospects did not suggest they fell outside the ambit of the Three Strikes law, their conduct in the present case partially, though not completely, placed them outside its spirit. It sentenced them accordingly, with considered

15

sentences reflecting their recidivism and gang membership: Both Reynoso and Rojas were sentenced as second-strikers, doubling the term they would otherwise have received; and the court chose the high term enhancement on the gang allegation and imposed multiple optional five-year sentence enhancements for their prior serious felony convictions. While other courts might not in the first instance have made the sentencing choices the trial court made, we cannot say striking Reynoso and Rojas's prior strikes was "so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, *supra*, 33 Cal.4th at p. 377.)

The People argue the trial court improperly struck the defendants' strikes "because it believed a life sentence was not appropriate for 'nonviolent' conduct." Characterizing the court as "impos[ing] its own additional requirements" to the Three Strikes law, they argue the trial court struck the strikes out of hostility to third strike sentencing and impermissibly reasoned backwards to achieve its preferred sentence in violation of *People v. Dent* (1995) 38 Cal.App.4th 1726, 1731 (*Dent*). To support this argument, they rely primarily on two trial court comments. First, the court said it could not "equate" life sentences for murder and other violent crimes to a conspiracy to commit extortion, even one committed for the benefit of a gang. Second, after the trial court mentioned Reynoso's manslaughter conviction, it said that "in order to reach the sentence that I am going to impose, which I believe is appropriate in this case, which would be 23 years, I do need to strike that strike."

The court's comments must be understood in context. Immediately before making the statements on which the People rely, the court stated it had no antipathy toward third strike cases and had imposed third strike sentences in the past. The

16

court then described the facts and circumstances of the present offense: The defendants' conduct was "very serious and threatening" to the community, but at the same time, there were no assaults; there was no violence; the "victims, quote, unquote," of the crime were gang members themselves; and there had never been evidence any victim experienced fear of what would happen if he or she did not pay Reynoso or Rojas. The court's reference to equating crimes, made in the course of describing the particular attributes of this offense, appears in context not to be a pronouncement that conspiracy to commit extortion could never warrant a life sentence, as the People suggest, but an explanation why this particular conspiracy to commit extortion, given its characteristics, was mitigated in the manner of its commission, justifying the court's decision to strike some of the defendants' strikes. (*Wallace*, *supra*, 33 Cal.4th at pp. 753–754.) "A court might . . . be justified in striking prior conviction allegations with respect to a relatively minor current felony, while considering those prior convictions with respect to a serious or violent current felony." (*People v. Garcia* (1999) 20 Cal.4th 490, 499.)

Having discussed its reasons for striking some strikes, the court then announced the sentence for each defendant individually, identifying which specific strikes it intended to strike and how it calculated each sentence. While the court's reference to needing to strike one of Reynoso's strikes could be interpreted as indicating an impermissible intent, it may also be understood as an end-of-day shorthand combining the court's already-explained intent to strike some of Reynoso's strikes with a statement of its desire to impose a heavy sentence that took into account his recidivism and his gang activity through second strike sentencing, high terms for the offense and the gang

17

enhancement, and enhancements for his prior serious felonies. We understand the court to have been saying this was the sentence it believed appropriate for Reynoso based on the considerations previously articulated; this was how the court arrived at it; and this was the ruling to be made to effectuate it, including identifying the strike it had selected to strike.[5] This interpretation is consistent with the court's statement, made shortly thereafter, identifying another of Reynoso's strikes as one it concluded "definitely should not be struck." "In the absence of a clear showing that its decision was arbitrary or irrational, a trial court should be presumed to have acted to achieve legitimate objectives and, accordingly, its discretionary determinations ought not be set aside on review." (*People v. Preyer* (1985) 164 Cal.App.3d 568, 573–574.)

We disagree with the People that this case is akin to *Dent*, *supra*, 38 Cal.App.4th at page 1731. In *Dent*, the trial court failed to exercise its discretion: it disregarded the defendant's background and the nature of his offenses, imposing sentence not on the basis of individualized consideration but in an express effort to circumvent the Three Strikes law. (*Ibid*.) In contrast, here the trial court extensively examined the defendants' backgrounds, character, and prospects, the nature of their prior offenses, and the details of their present offense and the current case. It "focuse[d] on considerations that [we]re pertinent to the specific defendant being sentenced." (*Ibid*.)

---

[5] The two-strike sentence selected by the court was only available if the court struck two strikes; later, when imposing sentence, the court struck two of Reynoso's prior strikes.

The People argue comparing Reynoso and Rojas with the previously-sentenced defendants was not appropriate because Reynoso and Rojas, as third-strike defendants, were differently situated, but the trial court's comments indicate it was aware of, and took into account, this distinction between Reynoso and Rojas and the other defendants, as well as the conduct underlying their strike convictions; and in recognition of this difference it imposed longer sentences on Reynoso and Rojas than the other defendants had received. The People also contend the court should not have stricken strikes here because "it is arguable," though not established by authority, that the crime of conspiracy to commit extortion with a gang allegation is punishable with a life sentence, and because the Three Strikes law previously has been reformed to limit the availability of third strike sentences. These arguments illustrate the People's disagreement with the trial court's reasoning but do not establish any abuse of discretion. We may not substitute our judgment for that of the trial court. (*Carmony*, *supra*, 33 Cal.4th at pp. 376–377.)

## II. Five-Year Sentence Enhancements

Reynoso and Rojas argue the trial court lacked authority to impose five-year serious felony enhancements pursuant to section 667, subdivision (a)(1). We disagree.

Section 667, subdivision (a)(1) provides for the imposition of a consecutive five-year sentence enhancement for any person "convicted of a serious felony who previously has been convicted of a serious felony." Section 1192.7, subdivision (c), lists serious felonies; although conspiracy to commit extortion is not among the specifically enumerated felonies, the statute also provides that "any felony offense, which would also constitute a felony

19

violation of Section 186.22" is a serious felony. (*Id*., subd. (c)(28).) In *People v. Briceno* (2004) 34 Cal.4th 451, 459 (*Briceno*), the California Supreme Court held "section 1192.7(c)(28) includes within its ambit any felony offense committed for the benefit of a criminal street gang under the section 186.22(b)(1) gang sentence enhancement." Because Reynoso and Rojas each admitted a gang allegation under section 186.22, subdivision (b)(1), their convictions for conspiracy to commit extortion qualified as serious felonies for the purposes of section 667, subdivision (a)(1).

In *Briceno*, the court held that "while it is proper to define any felony committed for the benefit of a criminal street gang as a serious felony under section 1192.7[, subdivision] (c)(28), it is improper to use the *same* gang-related conduct *again* to obtain an additional five-year-sentence under section 186.22[, subdivision] (b)(1)(B)." (*Briceno*, *supra*, 34 Cal.4th at p. 465.) The improper bootstrapping and double punishment with which the *Briceno* court was concerned did not occur here. The trial court did not impose a serious felony sentence enhancement under section 186.22, subdivision (b)(1)(B) in addition to deeming the crime a serious felony. It deemed the crime a serious felony, imposed the gang enhancement applicable to any felony, and imposed two sentence enhancements under section 667, subdivision (a) because the instant offense was a serious felony and each defendant had prior serious felony convictions.

Reynoso and Rojas rely on *Briceno* to argue a gang enhancement only allows an offense to be treated as a serious felony in a future proceeding, not in the current proceeding. This argument reads *Briceno* too broadly and was rejected in *People v. Bautista* (2005) 125 Cal.App.4th 646, 656: "[W]hile *Briceno* does make a distinction between current and former offenses

enhanced by gang findings, the opinion holds only that a court is not permitted to 'bootstrap' a current felony with a gang enhancement into both a serious felony for purposes of section 667, subdivision (a) and a felony subject to the five-year additional sentence prescribed by section 186.22, subdivision (b)(1)(B)."  The California Supreme Court has cited *Bautista* with approval and has rejected arguments that "overstate[] the scope" of the *Briceno* decision.  (*People v. Jones* (2009) 47 Cal.4th 566, 573–574.)  The trial court did not err when it imposed sentence enhancements under section 667, subdivision (a)(1).

## DISPOSITION

The judgments are affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

STRATTON, J.

We concur:

BIGELOW, P. J.

WILEY, J.

21